BARTRAM and others *v.* ROBERTSON.*

*(Circuit Court, S. D. New York.)*

TREATY—STIPULATIONS CONSTRUED.

> The stipulation in a treaty with a foreign power, to the effect that no higher or other duties shall be imposed on the importation into the United States of any article, the produce or manufacture of the dominion of the treaty-making power, * * * than are or shall be payable on the like articles being the produce or manufacture of any other foreign country, *held,* not to prevent congress from passing an act exempting from duty like products and manufactures imported from any particular foreign dominion it may see fit.

*Dunning, Edsall, Hart & Fowler,* for plaintiffs. *Thos. H. Edsall,* of counsel.

*Stewart L. Woodford,* U. S. Atty., for defendant. *R. H. Worthington,* of counsel.

WALLACE, J. The demurrer to the complaint presents the question whether the plaintiffs are entitled to recover duties alleged to have been illegally exacted by the defendant, as collector of the port of New York, upon the following facts: The plaintiffs, in March and April, 1882, imported several invoices of sugars and molasses, which were the produce and manufacture of the island of St. Croix, a part of the dominions of the king of Denmark, upon which the defendant exacted and collected duties at the rates imposed on sugars and molasses by the act of congress of July 14, 1870, as amended by the acts of December 22, 1870, and March 3, 1875. These acts prescribe the duty to be collected upon all sugars and molasses of designated grades.

*Affirmed. See 7 Sup. Ct. Rep. 1115.

Since 1857 there has existed a treaty between the United States and Denmark, one stipulation of which is as follows: "No higher or other duties shall be imposed on the importation into the United States of any article, the produce or manufacture of the dominion of his majesty the king of Denmark, * * * than are or shall be payable on the like articles being the produce or manufacture of any other foreign country."

In 1875 a treaty was concluded between the United States and the Hawaiian islands whereby several specified articles, among them being sugars and molasses, but "being the growth, manufacture, or produce of the Hawaiian islands," were to be admitted to all the ports of the United States free of duty. This treaty was not to take effect until a law to carry it into operation should have been passed by congress. In 1876 the necessary legislation was passed, and, upon due proclamation by the president, the treaty became operative and has ever since remained in force.

The plaintiffs duly protested against the exaction of duties upon their importation, insisting that, by force of the treaties and legislation referred to, their importations, being the produce and manufacture of the dominions of Denmark, were exempt from duties, and no other or higher duties could lawfully be imposed upon them than were payable upon like articles when the growth, manufacture, or produce of the Hawaiian islands. Having taken all the requisite preliminary steps required by statute, plaintiffs brought this action to recover the duties exacted by the defendant. They now rely upon the position that the Danish treaties operates to limit the duties on Danish products to the amount collectible under the Hawaiian treaty upon Hawaiian sugar and molasses.

The consideration of the case will be simplified by assuming, without extended discussion, that the stipulation of the Danish treaty is operative and controlling, except so far as it has been annulled by the subsequent laws of congress. When the provisions of a treaty by their terms, or by reasonable implication from their subject-matter, require legislative action to carry them into effect, they do not operate of themselves. The Danish treaty contained two stipulations, in separate articles, that required the payment of money on the part of the United States. The other stipulations, including the one under consideration, could execute themselves. Congress made the necessary appropriation for the payment of the moneys promised. 11 St. at Large, 261. No further action on its part seemed necessary, and its silence when the subject was before it is significant as a leg-

islative construction that it was not required to speak. That congress had the power to annul this treaty, so far as it might have validity as a rule of municipal law, is not disputed. Both treaties and acts of congress are, under the constitution, the supreme law of the land, and each are of equal authority within the sphere of the constitutional power of the respective departments of the government by which they are adopted; therefore the treaty or the act of congress is paramount, according as it is the latest expression of the will of the law-making power. *Ropes* v. *Clinch*, 8 Blatchf. 304; *Taylor* v. *Morton*, 2 Curt. C. C. 454; *Gray* v. *Clinton Bridge*, Woolw. 150; *Cherokee Tobacco*, 11 Wall. 616.

Assuming the stipulation of the Danish treaty and that also of the Hawaiian treaty to be completely operative, the question in the case may, in one aspect, be considered as one of construction, to ascertain the meaning and result of several laws, adopted at different times, relating to the general subject of duties to be imposed on importations from foreign countries. By the earliest law, the Danish treaty, all importations, the product of the Danish dominions, are to be free from the payment of higher duties than may be imposed upon products when imported from any other foreign country. By a later law—the several acts of congress imposing duties—specific duties are laid upon enumerated articles, irrespective of the countries whence they are imported; and by the latest law—the Hawaiian treaty—importations, the products of the Hawaiian islands, are exempted from duty. This question would certainly be presented in a light the most favorable to the plaintiffs by viewing their case as though the Danish treaty being in force, congress had subjected all sugars and molasses to specified duties, excepting the sugars and molasses the product of the Hawaiian islands.

It cannot be fairly claimed that the Hawaiian treaty has more vigor than this would concede to it. Giving it this effect, an authority directly in point and adverse to the plaintiffs is found in *Taylor* v. *Morton, supra.* In that case a treaty between the United States and Russia contained a stipulation in the identical language of the Danish treaty, (8 St. at Large 446,) and by the tariff act of 1842 congress imposed a duty of $40 per ton on all hemps, "excepting Manilla, Suira, and other hemps of India," on which a duty of $25 only was laid. The collector of the port having exacted a duty of $40 per ton upon hemp imported from Russia, an action was brought to recover the difference between that duty and the duty collectible on the hemps of India, upon the ground that by force of the Russian

treaty no higher duty could be exacted than was leviable upon the hemps of India. It was urged that the tariff act should be read as though the Russian hemp were excepted as well as the Indian hemp. The court refused to sanction the suggestion, stating "that it would do violence to the language of the act, and would force into it an exception which it does not contain."

Irrespective of the authorities of *Taylor* v. *Morton*, and considered as an original proposition, there would seem to be no reasonable foundation for the plaintiff's contention. By the legislation of congress passed subsequent to the Danish treaty, the duties on importations from Denmark, as well as on all other importations, were imposed as congress had the right to prescribe them. It is not for the court to say that congress did not intend to prescribe the duties it laid, or incorporate an exception into the legislation which was not expressed. The court cannot assume that congress was ignorant of the stipulation in the Danish treaty, and cannot undertake to decide whether congress meant to ignore that stipulation or to recognize it. The judiciary must take the legislation as it finds it. It may interpret and construe, when the language of legislation permits, but here its powers and duty end. Grant that every intendment should be implied in favor of the observance of treaty obligations, here is an explicit enactment which leaves no room for implication. Certainly no greater efficacy can be imputed to the Hawaiian treaty than to an act of congress of the date when the treaty took effect. If congress, at the time that treaty became law, had passed an act exempting importations from the Hawaiian islands from duty, such an act would not manifest an intent to create a further exemption in favor of importation from Denmark, or to repeal existing duties on such importations.

Were it to be conceded that the stipulation of the Danish treaty should be deemed incorporated into the acts imposing duties as though congress had declared that the duties therein enumerated should not be collected, on importations the products of Denmark, at higher rates than might thereafter be imposed on importations being the products of any other foreign country, the plaintiffs would not be in any better plight. It would be necessary for them to maintain that their importations were subjected to higher duties than the products of other foreign countries. How is it to be determined what duties are imposed on importations of other foreign countries, except by reference to the general standard of duties? If the products of all countries, save one, are subjected to a uniform duty, how can it be

said the plaintiffs' products were subjected to a higher duty than those of any other country? The meaning of the stipulation is that there shall be no unfriendly discrimination in the imposition of duties between the duties of Denmark and those of other countries. The stipulation is satisfied when there is no discrimination, according to the rule and policy observed with foreign nations in general. The plaintiffs' argument involves the assumption that the exception is to be deemed the general rule.

There is a broader view of the controversy, however, which cannot be slighted. Stipulations like the one relied on are found in upwards of 40 treaties made between the United States and foreign powers since 1815. Without attempting an enumeration, it suffices to say there is a similar stipulation in the treaty with Prussia, with Sweden and Norway, with the two Sicilies, with Portugal, with Nicaragua, with Hayti, with Honduras, and with Italy, all of which were in force when congress enacted the present tariff act. If the argument for the plaintiffs is sound, all these treaty stipulations are to be deemed embodied in the tariff act so as practically to exempt from duty the importations of all these foreign countries whenever the products of a single country may be exempted from duty.

Can it be for a moment supposed that a stipulation in a treaty with a single power, exempting the products of that country from the payment of duty when imported here, made in the interest of our own commerce or manufactures, or designed upon special considerations of comity between the two nations, could be intended to affect such a far-reaching abrogation of our own revenue laws as would thus ensue? The proposition is too startling to be entertained.

Other considerations are suggested, opposed to the contention of the plaintiffs; but, without pursuing the subject further, it seems clear that their position is untenable.

Judgment ordered for defendant upon the demurrer.