## RIGHT TO ADMINISTER THE ESTATE OF A DECEASED ITALIAN.

Probate Court of Cuyahoga County.

IN RE ESTATE OF SAVARIO COSTANZO, DECEASED; APPLICATION FOR LETTERS OF ADMINISTRATION.

Decided, November 1, 1912.

*Estates of Decedents—Claim of Heir of a Deceased Italian to Appointment as Administrator as Against the Italian Consul—Provisions of the Italian and Swedish Treaties.*

1. Where the applicants for appointment as administrator of the estate of a deceased Italian are the Italian consul on the one hand, and on the other a stranger who is acceptable to ineligible heirs of the decedent who are residents of this country, the choice is entirely a matter of discretion on the part of the probate judge.
2. But where an heir of the decedent is eligible to appointment, his claim thereto is superior to that of the Italian consul, and letters must of necessity be issued to him.

*Anthony Gaughan, B. D. Nicola* and *J. V. Zottarelli,* for the heirs.

*Henry F. Payer,* for the Italian Consul.

HADDEN, J.

The question involved in this case is the right of the Italian Consul to be appointed administrator of one of his deceased countrymen, who has a minor son and heir living in this country, as well as a minor son and wife in Italy, as against a stranger who is acceptable to the son living in this country. The question is raised upon the applications of Pasquale Coreno and Nicola Cerri, a consular agent for Italy in this city. The application of Pasquale Coreno filed on the 29th day of November, 1911, avers that Savario Costanzo died on the 27th day of November, leaving Angela Costanzo his widow, Antonio Costanzo, son six years of age, both living in Italy, and John Costanzo, a son fourteen years of age, and James Costanzo, a brother, the latter two living in Cleveland, Ohio; and that the whole personal

estate of said decedent consists of wages due from the Lake Shore & Michigan Southern Railroad Co. and money in the hands of the Hogan Co., the probable value of which will not exceed $100 The averment as to the real estate is that it consists of nothing.

The application of Dr. Cerri, filed December 11, 1911, is substantially the same with the exception that it omits James Costanzo, a brother mentioned in the previous application, from the list of next of kin, and in addition to the personal estate mentioned, Dr. Cerri states that there is an unliquidated claim for wrongfully causing the death of the decedent against the Big Four Railroad and others. The attorney for Pasquale Coreno contends that an unliquidated claim for damages is not assets of an estate, and therefore the appointment of an administrator can not be justified in cases where there is only a claim for wrongfully causing death.

The court is not at this point prepared to say how much weight should be given to this argument, for it appears from both applications that there is personal property besides this unliquidated claim for damages. Such personal property amounts to about $100, and it is the opinion of this court that that alone justifies the appointment of an administrator without going into the moot question of whether such appointment would be justified where there was no personal property except the claim for wrongfully causing death.

The rule heretofore adopted by this court as to the right of the appointment of the Italian consular agent in cases of this kind has been materially modified by the case of *Rocca* v. *Thompson*, 223 U. S., 317. The court there held that the provisions of the Argentine treaty, which are generally considered as being applicable to the Italian treaty, were not as sweeping as had been thought, but that it merely gave the consular agent the right to protect the interests of his nationals in the administration of his estate, join in the proceedings for administration, or take possession of the decedent's goods temporarily.

The Supreme Court of the United States in this case denied the right of the Italian Consul to be appointed administrator of an estate of any Italian subject as against the public adminis-

trator of the state of California. The consular agent in the case under consideration however, does not rely upon the provisions of the Argentine treaty, but he here claims under the provisions of the Swedish treaty, which was promulgated March 20, 1911.

The provisions of the treaty between the United States and Italy proclaimed September 27, 1878, in Articles 16 and 17, read as follows:

"Article 16. In case of the death of a citizen of the United States in Italy, or of an Italian citizen in the United States, who has no known heir, or testamentary executor designated by him, the competent local authorities shall give notice of the fact to the consuls, or consular agents of the nation to which the deceased belongs, to the end that information may be at once transmitted to the parties interested.

"Article 17. The respective consuls general, consuls, vice-consuls and consular agents, as likewise the consular chancellors, secretaries, clerks or attaches, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation."

Of course it is not contended for a minute by the consular agent that he gets his right for the appointment in this case from the specific terms of this treaty, but he claims that under the terms of Article 17, he is entitled to the rights, prerogatives and privileges which are granted to consular agents of the most favored nation, and he claims that Sweden, by virtue of the treaty of 1911, was designated as a more favored nation than Italy in this respect, and that he is therefore entitled to the same privileges as the Swedish counsular officer would be in the same situation.

Article 14 of the Swedish treaty reads as follows:

"In case of the death of any citizen of Sweden in the United States, or of any citizen of the United States in the Kingdom of Sweden, without having in the country of his decease any known heirs or testamentary executors by him appointed, the competent local authorities shall at once inform the nearest consular officer of the nation to which the deceased belongs of the circumstances, in order that the necessary information may be immediately forwarded to parties interested.

"In the event of any citizens of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul-general, consul, vice-consul-general, of vice-consul of the nation to which the deceased may belong, or in his absence the representative of such consul-general, consul, vice-consul general, or vice-consul, shall so far as the laws of each country will permit and pending the appoinment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate.

"It is understood that when, under the provisions of this article, any consul-general, consul, vice-consul-general, or vice-consul, or the representative of each or either, is acting as executor or administrator of the estate of one of his deceased nationals, said officer or his representative shall, in all matters connected with, relating to, or growing out of the settlement of such estates, be in such capacities as fully subject to the jurisdiction of the courts of the country wherein the estate is situated as if said officer or representative were a citizen of that country and possessed of no representative capacity whatsoever.

"The citizens of each of the contracting parties shall have power to dispose of their personal goods, within the jurisdiction of the other, by sale, donation, testament, or otherwise, and their representatives, being citizens of the other party, shall succeed to their personal goods, whether by testament or *ab intestato*, and they may in accordance with and acting under the provisions of the laws of the jurisdiction in which the property is found take possession thereof, either by themselves or others acting for them, and dispose of the same at their will, paying such dues only as the inhabitants of the country wherein such goods are shall be subject to pay in like cases.

"As for real estate, the citizens and subjects of the two contracting parties shall be treated on the footing of the most favored nation."

The first question then presented to the court is whether the terms of the Swedish treaty must be considered as having been virtually incorporated into the Italian treaty by virtue of the most favored nation. That it is so incorporated is attacked by attorney for Coreno, on the ground that the right given to the Swedish consular officers was not a privilege or a favor, but

it was a bargain given for value and Italy should not be allowed to have the advantage of the bargain without paying the same price.

In my view of the case it is not necessary to go into the question, but I might say in passing that this presents an exceedingly close question. All the authorities cited as bearing out the contention of the Italian consular agent are based upon *In re Fattosini*, 67 N. Y. Supp., 1119. The reasoning in that case is very meager and unsatisfactory, so that the doctrine of the applicability of the most favored nation clause in such a case rests upon a very insecure foundation, when compared with the reasoning of Caleb R. Cushing, 6 Op. of Attorney-general, 148, in an analogous case, namely, that of the consular agent's right to demand the surrender of deserting seamen from an alien ship. The cases of *Rocca* v. *Thompson,* 223 U. S., 317; *Ship James & William* v. *U. S.,* 37 Ct. of Claims, 303; *Thingvalla Line* v. *U. S.,* 24 Ct. of Claims, 255; *Bertram* v. *Robertson,* 122 U. S., 116; *Whitney* v. *Robertson,* 124 U. S., 190; and the scholarly article of Stanley K. Hornbeck on the most Favored Nation Clause in *3 American Journal of International Law,* 395, 619, 797, all intimate the opposite of the doctrine above set forth.

But however that may be, a decision of that question is not necessary in the present case. For the purpose of this case we may assume that the clause does not apply and rest the decision on other grounds.

It will be noticed that the clause "shall * * * have the right to be appointed as administrator of such estate" in the Swedish treaty is qualified and limited by the clause "so far as the laws of each country will permit." This idea is also carried out in the next paragraph which provides that if the consular agent is acting as administrator of the estate of one of his deceased nationals he shall "be in such capacities as fully subject to the jurisdiction of the courts of the country wherein the estate is situated as if said officer or representative were a citizen of that country and possessed of no representative capacity whatsoever." It is also plainly seen that the United States Supreme Court does

not favor a construction of a treaty so as to take away from the right of administration, unless the treaty clearly warrants it (*Rocca* v. *Thompson,* 223 U. S., 317). It is therefore plainly evident that the Swedish treaty does not displace the administration laws of Ohio, but rather that it affirms them and makes itself subordinate to them.

What then is the meaning of the clause "shall * * * have the right to be appointed as administrator of such estate"? The statute governing the appointment of an administrator in Ohio is Section 10617, General Code. This provides that the husband or widow of the deceased shall have the first right to be appointed then comes the next of kin; next comes creditors; and lastly such person as the court shall deem fit. Reading the treaty in connection with this statute it is plainly to be seen that the right of the consular agent is postponed to the third class. In other words, a husband or widow, next of kin who are competent, and creditors, all have a prior right, and the consular agent stands in the same situation as a stranger to the estate and he can only demand that he be not discriminated against because he is a foreigneer or the representative of a foreign government.

The case of *In re Estate of Cornelo Guerrieri,* from Newark, says N. J., and cited by the attorney for Cerri, seems to take much the same view of it, for in the course of the opinion Martin, J., says:

"This (meaning clause of treaty) seems to qualify them (consuls) as proper parties to receive letters of administration. It does not exclude others ordinarily entitled to letters. * * * It would seem that the statement in the fourteenth article of the treaty with Sweden meant to add the right to be classed as one of those entitled to administration on the estate of decedents described in the article."

And the ground for the appointment of the consular agent in that case was that none of the others entitled to it have claimed the right.

I have, of course, not been unmindful of the fact that a treaty may supersede a state law. But it must be clearly shown that the treaty meant to conflict with the state law, and where

as here, the treaty specifically states that it is in conformity with state law it can not be urged that the law of the state is not applicable.

To recapitulate then it is evident that in the absence of any treaty between the United States and Italy, the Italian consular agent would not be entitled as of right to letters of administration upon the estate of his deceased nationals. It is likewise true that under the Italian treaty of 1878 he does not get that right. And further, even if the most favored nation clause of the Italian treaty applies, he does not get that right under the Swedish treaty, since that is only applicable so far as the laws of the country permit, which would put the consular agent in the fourth class of Section 10617.

I am therefore of the opinion that it is entirely discretionary with the court as to who shall be appointed administrator of this estate since both applicants are strangers to the estate. Looking therefore to the qualifications and fitness of the two applicants, I am disposed to grant Cerri's application and he will be appointed upon his giving a bond in a sufficient amount.

---

IN RE ESTATE OF CELESTE ANDREANO; APPLICATION FOR LETTERS. OF ADMINISTRATION.

The question presented in this case is very similar to the one presented in the Costanzo case. On the 19th day of August, 1912, Giovanni Andreano filed an application for letters of administration upon the estate of Celeste Andreano, alleging that Celeste died on or about the third day of August, 1912, intestate, leaving no widow, but two brothers, three sisters and a father. According to the application, one of the brothers, Giovanni Andreano, the applicant in this case, is a resident of Cleveland, Ohio, and one of the sisters, Rosina Andemo Di Michele, lives at Hudson, Ohio, while the rest of the next of kin are residents of Rionero, Sammitico, Italy. The application further alleges that the whole personal estate of said decedent consists of a claim for wrongful death against the Cleveland & Pittsburgh Railroad Co. the probable value of which will not exceed $100.

A similar application was also filed by Nicola Cerri setting forth substantially the same facts. The question thus presented is, whether the Italian consular agent is entitled to be appointed as administrator of the estate of a deceased Italian citizen who has next of kin living in this country, who are competent under our laws to be appointed. As will be noticed this question is not exactly the same as the one presented in the Costanzo case, for there the next of kin living in this country were ineligible to be appointed administrator, but the same reasoning used reaching the result in that case will also apply in this. That in a shortened form was as follows:

If there were no treaty between the United States and Italy, the Italian consular agent could not ask for this appointment, inasmuch as our laws would govern; but there is a treaty between the United States and Italy, made in 1878, which however in so many words does not govern the particular phase of this situation. It is therefore clear that the consular agent must claim this appointment under some other rights than that of the Italian treaty. He makes his claim under the provisions of the Swedish treaty, proclaimed in March, 1911, claiming that the most favored nation clause of the Italian treaty of 1878 carries with it the provisions of the Swedish treaty on this subject. As I showed in the Costanzo case, I am of the opinion that the Swedish treaty does not give the Swedish consular agents as broad a right as the Italian consular agent here claims for it; assuming then for the purpose of this opinion that the most favored nation clause of the Italian treaty does include the provisions of the Swedish treaty, I am of the opinion that the Swedish treaty did not mean to abrogate the state law, but was made in accordance with it, as is plainly shown by the wording of the fourteenth section. It would therefore follow that Section 10617, General Code, of the laws of Ohio is still in force, even under the provisions of the Swedish treaty, and the Swedish consular agent would come in under the fourth class mentioned in that section; this section provides that the husband or widow of the deceased shall have the first right to be appointed administrator, after that come the next of kin, thirdly

come creditors, and fourth come those who in the absence of any of the other three classes who do not desire administration, the court shall deem fit.

It is plainly to be seen here that the Swedish consular agent, and therefore the Italian consular agent who claims the same rights, would come within the fourth class, while the other applicant in this case comes within the second class, being a brother of the decedent and in the absence of wife and children, a next of kin, and he therefore has a better claim than the consular agent and the court must of necessity appoint him.