## BARTRAM *v.* ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued April 29, 1887. — Decided May 23, 1887.

The provisions in the treaty of friendship, commerce, and navigation with the king of Denmark, concluded April 26, 1826, and revived by the convention of April 11, 1857, do not, by their own operation, authorize the importation, duty free from Danish dominions, of articles made duty free by the convention of January 30, 1875, with the king of the Hawaiian Islands, but otherwise subject to duty by a law of Congress, the king of Denmark not having allowed to the United States the compensation for the concession which was allowed by the king of the Hawaiian Islands.

THIS was an action to recover back duties alleged to have been illegally exacted by the collector at New York. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion of the court.

*Mr. H. E. Tremain* and *Mr. A. J. Willard* for plaintiffs in error.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE FIELD delivered the opinion or the court.

The plaintiffs are merchants doing business in the city of New York, and in March and April, 1882, they made four importations of brown and unrefined sugars and molasses, the produce and manufacture of the Island of St. Croix, which is

a part of the dominions of the king of Denmark. The goods were regularly entered at the custom-house at the port of New York, the plaintiffs claiming at the time that they should be admitted free of duty under the treaty with Denmark, because like articles, the produce and manufacture of the Hawaiian Islands, were, under the treaty with their king, and the act of Congress of August 15, 1876, to carry that treaty into operation, admitted free of duty. The defendant, however, who was the collector of the port of New York, treated the goods as dutiable articles, and, against the claim of the plaintiffs, exacted duties upon them under the acts of Congress, without regard to those treaties, amounting to $33,222, which they paid to the collector under protest in order to obtain possession of their goods. They then brought the present action against the collector to recover the amount thus paid. The action was commenced in a court of the state of New York, and, on motion of the defendant, was transferred to the Circuit Court of the United States.

The complaint sets forth the different importations; that the articles were the produce and manufacture of St. Croix, part of the dominions of the king of Denmark; their entry at the custom-house, and the claim of the plaintiffs that they were free from duty by force of the treaty with the king of Denmark and of that with the king of the Hawaiian Islands; the refusal of the collector to treat them as free under those treaties; his exaction of duties thereon to the amount stated, and its payment under protest; and asked judgment for the amount. The defendant demurred to the complaint on the ground, among others, that it did not state facts sufficient to constitute a cause of action against him. The Circuit Court sustained the demurrer, and ordered judgment for the defendant with costs, 21 Blatchford, 211; and the plaintiffs have brought the case to this court for review.

We are thus called upon to give an interpretation to the clause in the treaty with Denmark which bears upon the subject of duties on the importation of articles produced or manufactured in its dominions, and the effect upon it of the treaty with the Hawaiian Islands for the admission without duty of similar articles, the produce and manufacture of that kingdom.

The existing commercial treaty between the United States and the king of Denmark, styled "General convention of friendship, commerce, and navigation," was concluded on the 26th of April, 1826. 8 Stat. 340. It was afterwards abrogated, but subsequently renewed, with the exception of one article, on the 12th of January, 1858. 11 Stat. 719.

The first article declares that "the contracting parties, desiring to live in peace and harmony with all the other nations of the earth, by means of a policy frank and equally friendly with all, engage, mutually, not to grant any particular favor to other nations in respect of commerce and navigation which shall not immediately become common to the other party, who shall enjoy the same freely, if the concession were freely made, or upon allowing the same compensation, if the concession were conditional."

The fourth article declares that "no higher or other duties shall be imposed on the importation into the United States of any article, the produce or manufacture of the dominions of his majesty the king of Denmark; and no higher or other duties shall be imposed upon the importation into the said dominions of any article the produce or manufacture of the United States, than are, or shall be, payable on the like articles, being the produce or manufacture of any other foreign country."

The treaty, or convention, as it is termed, between the king of the Hawaiian Islands and the United States, was concluded January 30, 1875, and was ratified May 31 following. 19 Stat. 625. Its first article declares, that "for and in consideration of the rights and privileges granted by His Majesty the King of the Hawaiian Islands," and "as an equivalent therefor," the United States agree to admit all the articles named in a specified schedule, the same being the growth, produce, and manufacture of the Hawaiian Islands, into all the ports of the United States free of duty. Then follows the schedule, which, among other articles, includes brown and all other unrefined sugars and molasses.

The second article declares, that "for and in consideration of the rights and privileges granted by the United States of

America in the preceding article," and "as an equivalent therefor," the king of the Hawaiian Islands agrees to admit all the articles named in a specified schedule which were the growth, manufacture, or produce of the United States of America, into all the ports of the Hawaiian Islands free of duty. Then follows the schedule mentioned.

By the fourth article it is also agreed on the part of the Hawaiian king, that so long as the treaty remains in force he will not lease or otherwise dispose of, or create any lien upon any port, harbor, or other territory in his dominions, or grant any special privileges, or rights of use therein, to any other power, state, or government, nor make any treaty by which any other nation shall obtain the same privileges, relative to the admission of any articles free of duty, thereby secured to the United States.

The fifth article declared, that the convention should not take effect until a law had been passed by Congress to carry it into operation. Such a law was passed on the 15th of August, 1876. 19 Stat. 200, c. 290. It provided, that whenever the President of the United States should receive satisfactory evidence that the legislature of the Hawaiian Islands had passed laws on their part to give full effect to the convention between the United States and the king of those Islands signed on the 30th of January, 1875, he was authorized to issue his proclamation declaring that he had such evidence, and thereupon, from the date of such proclamation, certain articles, which were named, being the growth, manufacture, or produce of the Hawaiian Islands, should be introduced into the United States free of duty, so long as the convention remained in force. Such evidence was received by the President, and the proclamation was made on the 9th of September, 1876. 19 Stat. 666.

The duties for which this action was brought were exacted under the act of the 14th of July, 1870, as amended on the 22d of December of that year. 16 Stat. 262, 397. The act is of general application, making no exceptions in favor of Denmark or of any other nation. It provides that the articles specified, without reference to the country from which they

come, shall pay the duties prescribed. It was enacted several years after the treaty with Denmark was made.

That the act of Congress as amended, authorized and required the duties imposed upon the goods in question, if not controlled by the treaty with Denmark, after the ratification of the treaty with the Hawaiian Islands, there can be no question. And it did not lie with the officers of customs to refuse to follow its directions because of the stipulations of the treaty with Denmark. Those stipulations, even if conceded to be self-executing by the way of a proviso or exception to the general law imposing the duties, do not cover concessions like those made to the Hawaiian Islands for a valuable consideration. They were pledges of the two contracting parties, the United States and the king of Denmark, to each other, that, in the imposition of duties on goods imported into one of the countries which were the produce or manufacture of the other, there should be no discrimination against them in favor of goods of like character imported from any other country. They imposed an obligation upon both countries to avoid hostile legislation in that respect. But they were not intended to interfere with special arrangements with other countries founded upon a concession of special privileges. The stipulations were mutual, for reciprocal advantages. "No higher or other duties" were to be imposed by either upon the goods specified; but if any particular favor should be granted by either to other countries in respect to commerce or navigation, the concession was to become common to the other party upon like consideration, that is, it was to be enjoyed freely if the concession were freely made, or on allowing the same compensation if the concession were conditional.

The treaty with the Hawaiian Islands makes no provision for the imposition of any duties on goods, the produce or manufacture of that country, imported into the United States. It stipulates for the exemption from duty of certain goods thus imported, in consideration of and as an equivalent for certain reciprocal concessions on the part of the Hawaiian Islands to the United States. There is in such exemption no violation of the stipulations in the treaty with Denmark, and

if the exemption is deemed a "particular favor," in respect of commerce and navigation, within the first article of that treaty, it can only be claimed by Denmark upon like compensation to the United States. It does not appear that Denmark has ever objected to the imposition of duties upon goods from her dominions imported into the United States, because of the exemption from duty of similar goods imported from the Hawaiian Islands, such exemption being in consideration of reciprocal concessions, which she has never proposed to make.

Our conclusion is, that the treaty with Denmark does not bind the United States to extend to that country, without compensation, privileges which they have conceded to the Hawaiian Islands in exchange for valuable concessions. On the contrary, the treaty provides that like compensation shall be given for such special favors. When such compensation is made it will be time to consider whether sugar from her dominions shall be admitted free from duty.

*Judgment affirmed.*