Richardson, Ch. J.,
delivered the opinion of the court:
The claimants were the owners and the agents respectively of the Danish steam-ship Geiser, which, having cleared from the port of Copenhagen, in Denmark, arrived in the port of New York, and upon the entry thereof at the custom-house, August 3,1888, the collector of that port collected of them the sum of $366.50 upon 733 passengers not citizens of the United States, then landed from said vessél. This was done in accordance with the requirement of the Act of August 3, 1882, chapter 376, entitled “An act to regulate immigration” (22 Stat. L., 214), which provides in section 1:
u That there shall be levied, collected, and paid a duty of fifty cents for each and every passenger not a citizen of the United States who shall come by steamer or sail vessel from a foreign port to any port within the United States. The said duty shall be paid to the collector of customs of the port to which such passenger shall come, or if there be no collector at such port, then to the collector of customs nearest thereto, by the master, owner, agent, or consignee of every such vessel, within twenty four hours after the entry thereof into sqch port. * * * ”
The claimants made application to the Secretary of the Treasury to refund the money so collected, in exercise of his power *261 under section 26 of Act of June 26,1884 (23 Stat. L., ch. 121, p. 59), which is as follows: ,
“ Sec. 26. That whenever any fine, penalty, forfeiture, exaction, or charge arising under the laws relating to vessels or seamen has been paid to any collector of customs or consular officer, and application has been made within one year from such payment for the refunding or remission of the same, the Secretary of the Treasury, if on investigation he finds such fine, penalty, forfeiture, exaction, or charge was illegally, improperly, or excessively imposed, shall have the power, either before or after the same has been covered into the Treasury, to refund so much of such fine, penalty, forfeiture, exaction, or charge as he may think proper, from any money in the Treasury not otherwise appropriated.”
Controverted questions of law having arisen upon that application, the Secretary of the Treasury, at the request of the claimants, transmitted the same to this court under the provisions of section 12 of the Act of March 3, 1887 (24 Stat. L., ch. 359, p. 507).
One of the grounds upon which the claimants rely to show that the money was illegally collected is the allegation that such collection is in violation of the terms of the Treaty of 1826 (8 Stat. L., 340), re-affirmed in 1857 (11 Stat. L., 720). On that account the counsel for the United States insists that the court has no jurisdiction and can not make any finding of facts and conclusions of law as required by said Act of March 3,1887, by reason of the prohibition contained in the following section of the Revised Statutes:
“ Sec. 1066. The jurisdiction of the said court shall not extend to any claim against the Government not pending therein on December one, eighteen hundred and sixty-two, growing out of or dependent on any treaty stipulation entered into with foreign nations or with the Indian tribes.”
We hold now as we held in the OMcTcasaw Nation Case (22 C. Cls. R., 247), that the restriction of that section does not apply to the peculiar jurisdiction of this court conferred by the Bowman Act of 1883 (22 Stat. L., 485), and by section 12 of the Act of March 3, 1887, before cited. The acts conferring juris-’ diction upon the court to find the facts, make conclusions of law, and give opinions in matters referred by heads of the Executive Departments without entering judgments, are of later date than tbe Revised Statutes, and they contain no restriction.
*262 It is sufficient to refer to the Chickasaw Nation Case for a full exposition of our views on the subject.
We shall therefore proceed to a consideration of the law upon the facts admitted.
The treaty between the United States and Denmark (8 Stat., 340, and 11 Stat., 720) contains the following articles:
“ Ant. 1. The contracting parties, desiring to live in peace and harmony with all the other nations of the earth by-means of a policy frank and equally friendly to all, engage mutually not to grant any particular favor to .other nations in respeet of commerce and navigation which shall not immediately become common to the other party, who shall enjoy the same freely if the concession were freely made, or on allowing the same compensation if the concession were conditional.
“ Art. II. The contracting parties being likewise desirous of placing the commerce and navigation of their respective countries on the liberal basis of perfect equality and reciprocity, mutually agree that the citizens and subjects of each may frequent all the coasts and countries of the other (with the exception hereinafter provided for in the sixth article), and reside and trade there in all kinds of produce, manufactures, and merchandise; and they shall enjoy all the rights, privileges, and exemptions in navigation and commerce which native citizens or subjects do or shall enjoy, submitting themselves to the laws, decrees, and usages there established to which native citizens or subjects are subjected. But it is understood that this article does not include the coasting trade of either country, the regulation of which is reserved by the parties, respectively, according to their own separate laws.”
The claimants urge that the collection of this duty or tax is in violation of that treaty for two reasons :
(1) The act of 1882 excepts citizens of the United States from those passengers on account of whom the duty is levied, and so the claimants allege that the citizens of Denmark are entitled by the treaty to the same exemption.
(2) The Act of June 26,1884 (22 Stat. L., ch. 121, § 22, p. 58), makes a further exception of “ passengers coming by vessels employed exclusively in trade between the ports of the United . States and the ports of the Dominion of Canada or the ports of Mexico,” and so the claimants allege, this being a grant of a particular favor to Mexico and Canada, the citizens of Denmark are entitled to the same favor by reason of the first article of the treaty.
In the Head Money Oases (l 12 U. S. R., 580), to which the pres *263 ent claimants were parties, the record and briefs show that both these points were presented to the court and relied upon by the plaintiffs. From the opinion it is apparent that they made no impression upon the court. The cases were decided in fayor of tbe defendants, and it was distinctly held that even if any of the provisions of theTmmigration Act are in conflict with a pre-existing treaty with a foreign nation, the provisions of the act must prevail in all the judicial courts of this country. The claimants’ counsel seeks to have great force given to the word improperly” in the refunding section, 26, of the act of 1884, hereinbefore quoted, and he argues that if there be such conflict, the Secretary may .regard the tax as improperly collected, because it might involve the country in a controversy with a foreign nation. We can not concur in these positions taken by the claimants. In our opinion the word “improperly ” adds nothing in effect to the words “ illegally or' excessively imposed,” with which it is grouped in the section, and that if the provisions of the act are to prevail in all the courts of this country, as the Supreme Court say they are, they are equally binding on the Secretary of the Treasury, who must obey the law as all officers of the Government are bound to do. See also Bartram v. Robertson (122 U. S. R., 117); Whitney v. Robertson (124 U. S. R., 190); Kelly v. Hedden (124 U. S. R., 196).
There is another point raised in these cases which was not presented in the Head Money Cases, and which must be considered here. The claimants insist that the citizens of Denmark are exempt from the provisions of the Immigration Act of 1882 by reason of the following section of the Revised Statutes, found at the end of chapter 3, entitled “ Tonnage duties,”' in title 48, entitled “ Regulation of commerce and navigation
“ Seo. 4227. Nothing contained in this title shall be deemed in anywise to impair- any rights and privileges which have been, -or may be, acquired by any foreign nation under the laws and treaties of the United States relative to the duty on tonnage of vessels, or any other duty on vessels.”
The argument is that the Immigration Act relates to commerce and navigation, and so is in amendment of said title 48 •of the Revised Statutes, and is to be construed as though it were incorporated into and formed part of that title, where it would be limited by the provisions of said section 4227,
In our opinion this argument is not sound and we can not *264 adopt it as leading to the true construction of the statutes. While the act does, in a certain sense, relate to commerce and navigation, we are unable to find any of the numerous sections of the nine chapters of title 48 of the Bevised Statutes which are in the least amended or affected by it. The act contains entirely new and independent legislation, and makes no reference to pre existing laws. It is entitled “An act to regulate immigration,” and its place in the Bevised Statutes, if it were to be incorporated therein, would be in “ Title 29 — Immigration.”
Moreover, section 4227, upon which the claimants rely as controlling this act of 1882, was a reproduction in condensed language of section 3, chapter 107, of the Act of April 27, 1816 (3 Stat. L., 314); section 1, chapter 3, of the Act of January 14,. 1817 (3 Stat. L., 344), and section 15, chapter 163, of the Act of July 14, 1862 (12 Stat. L., 558), wherein the provisions relate-only to duties on tonnage, and it is now found in a chapter of' the Bevised' Statutes entitled “ Tonnage duties.” To extend its force so as to affect subsequent legislation on the subject of' immigration would be contrary to the rules of construction of statutes and against the clear intent of Congress.
On the whole case our conclusion of law is that the head money paid by the claimants was not illegally, improperly, or excessively imposed, and that the Secretary of the Treasury ha's no authority to refund it.
The clerk will certify a copy of the foregoing findings and conclusion of law to the Treasury Department, by which the, case was transmitted to this court.