### FRANK PERKINS v. STATE OF OHIO.

PHYSICIANS WHO MADE POST MORTEM CANNOT BE ASKED AS TO A MERE INFERENCE.

Upon the trial of a case, when the accused is charged with murder in the second degree, physicians having been called on behalf of the state, who testified that they had attended the *post mortem* examination, giving a full description of the wounds found upon the head of the deceased. their location, and that they were sufficient to produce death, it is error to permit such witnesses to give testimony against the objection of the accused as to the probable relative position of the parties at the time the fatal blow was struck; such testimony is the mere opinion of the witnesses based upon the facts proven, and from which the jury is as capable of drawing proper inferences as the witness.

Error to the Court of Common Pleas of Knox county.

ALBAUGH, J.

The plaintiff in error was indicted for murder in the second degree. He plead guilty, was tried and convicted of manslaughter, and sentenced to a term in the penitentiary. A bill of exceptions taken brings the whole record of the case before this court, and a petition in error is filed to reverse the judgment. Among the several errors assigned is, that the court erred in admitting certain testimony offered by the state and objected to by the accused.

The testimony offered on behalf of the state upon the trial tended to prove that on May 19, 1890, the deceased. Joseph Butcher, and the accused had been in Mount Vernon all day; that during the day they had met several times, and had trouble about some past differences; that the deceased had used violent and abusive language towards Perkins, and had made threats that he would do him violence the first time he met him; that these threats were communicated to Perkins before he left town. It further appeared that in the evening Butcher started home with his wife, and shortly afterwards Perkins started home on the same road, and soon overtook Butcher; that before he left town, Perkins procured a club and put it in his buggy. When he came up with Butcher, two other men by the name of Bricker and Sparks were also in the company; Butcher was quarreling with his wife, and at the instance of Bricker got out of his buggy and got in with Bricker. Bricker then got in with Mrs. Butcher, and Sparks got in the buggy with Perkins, leaving Butcher alone in the Bricker buggy At the suggestion of Butcher, Perkins got in with him. They rode in this way but a short distance when Perkins and Butcher began quarreling, and Perkins jumped out of the buggy, and soon thereafter Perkins struck Butcher with the club he had provided himself with, causing his death.

During the progress of the trial the state called one Dr. Burns as a witness, who testified that he had assisted in the *post mortem* examination of the deceased; that he found wounds upon the head; that the wound which produced death was back of the ear upon the left side of the head. He then gave a full description of the wounds and the fracture of the skull, and further testified that the wound on the left side of the head was sufficient to produce death instantly. The counsel for the state then asked the witness the following question:

"What was the relative position of the parties when the blow was struck; were they on the same or different plains with each other?" This was objected to by counsel for the accused. The objection was overruled, and exception, taken. The witness answered that he would say that they were not on the same plain with each other; that the one receiving the blow was two, or two and a half feet above the one giving it. Other questions were asked as to the position of the parties at the time, which were answered by the witness against the objections of the accused, and exception taken.

Dr. Scott was also called on behalf of the state, and in answer to the same question as to the position of the parties at the time the blow was struck, testified that in his judgment the party receiving the blow was either two or three feet higher, or the same distance lower than the person giving it This testimony was also objected to and exceptions taken. The claim is made on behalf of the plaintiff in error, that the position occupied by the parties at or about the time the fatal blow was struck, was not a matter upon which a witness could give an opinion as an expert.

The position of the parties was quite material in the trial of the case, inasmuch as the theory of the state was that Perkins had made the assault, and had

struck the fatal blow while Butcher was in the buggy and Perkins upon the ground; while the claim of the defense was that the blow was struck in self-defense, after Butcher had got out of the buggy, and was in the act of making an assault upon Perkins. A description of the wound caused by the blow, and the opinion of the surgeon as to whether it was sufficient to cause death, was proper testimony to go to the jury. His opinion upon this subject is competent, because he is presumed, from his experience and skill, to be better qualified to give an opinion upon such matters than persons who did not have such skill; but the existence of any fact which the jury is as capable and as well qualified to determine as the expert, would not be the proper subject of an opinion. The direction from which the blow came is a matter the surgeon might be able to determine from an examination of the wound, whether from behind or before, or from one side or the other, or from above or below, and this he would be better able to determine from experience than the jury; but the position of the parties at the time the wound is made, is a fact about which persons of common observation would know as much as the expert.

The admission of the mere opinion of the witness as evidence must come within the exception to the general rule that only facts be stated to the jury, and when it appears that the jury was equally capable with the witness of forming an opinion from the facts stated, it is error to admit in evidence such opinion.

In Protection Ins. Co. v. Harmer, 2 O. S. 456, it is said that "the general rule certainly is that facts only can be given in evidence, and the necessary and natural deduction from them must be made by the jury. In everything pertaining to the ordinary and common knowledge of mankind, jurors are supposed to be competent, and indeed peculiarly qualified to determine the experienced connection between cause and effect, and to draw the proper conclusion from the facts before them. If the answer can be given from ordinary experience and knowledge, the jury must respond to it unaided; if the effects of such a cause are only known to persons of skill, and are to be determined only by the application of some principle of science or art, such persons may give the results of their own investigation and experience to the jury in the way of opinions the better to enable them to come to a correct conclusion."

The case of Kennedy v. People, 39 N. Y. 245, is in point. In that case it was held that "when the form, nature, extent and direction of the fatal wounds, with their location on the head, the amount of force necessary to produce them, and the probable shape of the instrument used are given, it is not competent to receive the opinion of a surgeon as to the probable position of the deceased when the blow was received. If the position of the body when the blows were struck was material, it should have been left to the jury to infer that position from the facts which tended to show it."

The case of Hopt v. People of Utah, 122 U. S. 120, is cited by counsel for the state as supporting their claims. In that case the deceased came to his death from a blow inflicted upon the left side of his head which crushed the skull. A *post mortem* examination of the body was made by a physician, who was allowed, against the objection of the defendant, to give his opinion as to the direction from which the blow was delivered after he had stated that his examination of the body had enabled him to form an intelligent opinion upon that point. The ground of objection was that the direction in which the blow was delivered was not a matter for the opinion of an expert, but one which should be left to the jury.

The court overruled the objection, and the defendant excepted. The witness stated, as his opinion, that the blow was delivered from behind and above the head of the person struck and from the left toward the right. It was held that the testimony was competent. The court said that it was a conclusion of fact which he would naturally draw from the examination of the wound.

Also in Commonwealth v. Sturtivant, 177 Mass. 122, a witness who had experience in the examination of blood stains, and who had examined blood upon a coat when it was fresh, was permitted to testify that the appearance of the blood indicated that it came from below upward.

Other cases might be given in which witnesses were permitted to give an opinion as to the direction from which a blow was given. But these cases do

not have application to the case under consideration. In this case the opinion of the witness was competent as to the probable direction from which the blow was given. Having made an examination of the wound, he could give an opinion with some certainty, but the position and location of the parties would be a matter of mere conjecture, a matter about which the jury could draw a conclusion as accurately from the surrounding circumstances as the surgeon. This is the more apparent when we look to the testimony of one of the witnesses upon this subject. He testified that in his opinion the one giving the blow was two feet higher, or two feet lower than the one giving it.

The testimony, we think, was improperly admitted, for which the judgment must be reversed.

J. B. Waight, for plaintiff in error.

W. M. McElroy, prosecuting attorney, and Cooper & Moore, for defendant in error.