LOUIS WOLF & CO. *v.* UNITED STATES [1]

United States Customs Court, First Division

(Decided October 17, 1938)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.
*Joseph R. Jackson*, Assistant Attorney General (*Charles J. Miville, Daniel G. McGrath*, and *John J. McDermott*, special attorneys; and *Alfred A. Taylor, Jr.*, junior attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., concurring

SULLIVAN, Judge: The merchandise in question consists of sun glasses valued at not more than 65 cents per dozen. It was assessed with duty at 20 cents per dozen and 15 per centum ad valorem under paragraph 225 of the Tariff Act of 1930.

At the trial plaintiffs' counsel stated he abandoned all claims involving the classification of the merchandise, and relied entirely on the "Reciprocal Treaty issue."

[1] C. D. 48.

This claim is stated in the protest as follows:

It is further and alternatively claimed as to all dutiable merchandise covered by the entry or entries that said merchandise is, by virtue of treaty or trade agreement with the country of exportation or Section 350 (a) of the Tariff Act of 1930 as amended, entitled to a reduction of 20 per centum of the rates of duty or tax provided by law or to the benefit of such reduced rate as specified in any treaty or trade agreement. In any event no higher or other duty or tax is assessable than is payable on like articles, the product of the soil or industry of any other foreign country.

At the hearing counsel for the Government stated:

* * * there is no question of fact involved in this case. It is merely a question of law. The question of law is the identical question that was involved in the case of *Von Damm* v. *United States,* Suit 4048 (T. D. 49094, 25 C. C. P. A. 97). That question was as to whether importations from the Argentine were entitled to certain reductions given to the Republic of Cuba under a trade agreement made with Cuba in 1934. * * *

Plaintiffs' counsel submitted the protest on the record and the papers in the case. Time was given to both sides for briefs.

It will be observed that the merchandise at bar was imported from Japan, and entered at the port of New York on March 12, 1935.

Plaintiffs in their brief contend that the case at bar differs from the *Von Damm* case, *supra,* and in their reply brief state:

As a matter of fact the issue in this case has never been decided adversely to plaintiff's contention by the Court of Customs and Patent Appeals or by any other court. The Court of Customs and Patent Appeals could not have decided the issue here raised in the Von Damm case because in the Von Damm case the merchandise was covered by Schedule II of the trade agreement with Cuba, whereas, in the present case, the merchandise is not covered by said schedule but falls within the residuary provision for an allowance of 20%. In the Von Damm case there was no question that the former preferential treatment to Cuba had been modified as to the merchandise there under consideration. The sole question was whether or not it might be said, in view of the two columns in Schedule II, that Congress in the second column intended to grant an exclusive privilege to Cuba. In the case at bar there is no such question and in view of the circumstances of the case there could not by any possibility be such question because, as above stated, the merchandise at bar is not covered by Schedule II.

* * * * * * *

* * * the question at issue is whether or not by the new trade agreement with Cuba there was a modification of the preferential customs treatment *accorded to the merchandise under consideration* at the time of the new trade agreement.

It will thus be observed that by the briefs and the protest the question presented is one of law.

First: Is the merchandise involved in the case at bar entitled to the 20 per centum reduction provided for in the trade agreement between the United States and Cuba of date August 24, 1934? T. D. 47232, 66 Treas. Dec. 189.

Second: Is the merchandise herein, being an importation from Japan, entitled by virtue of the favored-nation clause in a Treaty of Commerce and Navigation with Japan, proclaimed March 21, 1895, entitled to the reduction of 20 per centum provided for in the trade agreement between Cuba and the United States?

In the *Von Damm* case, *supra*, many of these questions have been answered. Admittedly, that case referred to specific merchandise the product of both Cuba and Argentina. In the case at bar the merchandise involved, while indigenous to both countries, yet is not specifically disclosed in any treaty or agreement between the United States and Japan. For that reason plaintiffs contend the *Von Damm* case, *supra*, would not apply to the class of merchandise in the case at bar. In that respect there may be a difference between the cases; otherwise they are quite similar.

It will be noticed that the trade agreement between the United States and Cuba is a reciprocal one, in which advantages are granted to each country.

Article II of this agreement provides:

Articles the growth, produce, or manufacture of the United States of America enumerated and described in Schedule I annexed hereto and made a part of this Agreement, shall, on their importation into the Republic of Cuba, be granted exclusive and preferential reductions in duties not less than the percentages specified respectively in Column I of the said Schedule, such percentages of reduction being applied to the lowest rates of duty, respectively, now or hereafter payable on like articles the growth, produce, or manufacture of any other foreign country.

This clause is to the advantage of the United States.

The same is true of "every article the growth, produce, or manufacture of the United States of America which is not provided for in Article I," nor enumerated in schedule I.

Article III provides:

Articles the growth, produce, or manufacture of the Republic of Cuba, enumerated and described in Schedule II  *  *  *  shall, on their importation into the United States of America, be granted exclusive and preferential reductions in duties not less than the percentages specified respectively in Column 1 of the said Schedule, such percentages of reduction being applied to the lowest rates of duty, respectively, now or hereafter payable on like articles the growth, produce, or manufacture of any other foreign country.

This clause is to the advantage of Cuba, thus evidencing mutuality.

The foregoing clauses have reference to merchandise described in schedules I and II. Article III has a further agreement, referring to merchandise not included in schedules I or II; for it provides (T. D. 47232):

Every article the growth, produce, or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United

States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

This clause grants an exclusive right to Cuba for a 20 per centum reduction on all merchandise imported into the United States not enumerated in schedule II, or provided for in article I. This right, being exclusive, cannot inure to the benefit of merchandise from any other nation or country. It would require a specific declaration to meet such an exigency. This is not a modification of any other agreement or rate. It is a clear cut announcement that all merchandise from Cuba shall receive a 20 per centum reduction in duty. There is not any rule of law or logic that would cause the effect of this legislation to enure to the benefit of merchandise from any other country.

Congress had the power to enter into such a trade agreement. The right to import merchandise into the United States is not a vested right. Merchandise can enter this country only as a privilege granted by Congress, and on such terms as Congress may prescribe. In its wisdom it may prohibit all merchandise from entering this country.

The reciprocal agreement for which provision is made in this treaty is a conditional one to each party; that is, if Cuba has received a benefit on the exportation of merchandise entering the United States, the United States receive a benefit as to merchandise exported from the United States into Cuba. Thus the agreement becomes a conditional one as to the grant of a preferential rate to each country. Such rate is based on the fact that the preference shall apply only as to the produce or manufacture of either country. It is therefore, as was held in the *Von Damm* case, *supra*, exclusive, and not intended for countries outside the agreement, but only for the parties thereto. Thus the rule enunciated in *Bartram* v. *Robertson*, 122 U. S. 116, is applicable and controlling. In that case the court held that the statute levying a duty on sugar from Denmark, was not a violation of a treaty between the United States and that country by reason of the fact that the treaty with Hawaii was a conditional treaty, conditioned on privileges granted by one party to the other, and that the treaty with Denmark did not require the United States to extend to Denmark, without compensation, privileges conceded to Hawaii in exchange for valuable considerations.

It is the contention of the plaintiffs that the treaty with Japan would require the Government of the United States in the administration of its tariff law to grant a reduction in duties to Japan, as it does to Cuba, by reason of the Japanese treaty. An examination of that treaty does not indicate that there was any intention to grant advantageous relationships from one government to the other with

reference to specific or general merchandise imported from one to the other. The United States was not specifically granting to Japan any right or privilege not granted to all countries. The language used indicated it was a conditional treaty, and, of course, did not draw into its arms a special agreement between our country and any other than Japan. The construction of the favored nation clause by our country from its inception is contrary to this contention. Reasons therefor were set forth by Secretary of State Jay and followed by every Secretary of State since that time—that the favored-nation clause was not within the purview of treaties granting exclusive rights to one country over another. This rule has been sanctioned by the Supreme Court of the United States and many lower courts in holdings not necessary to cite or analyze, see *Bartram* v. *Robertson, supra*.

It would be an anomaly if Japan or any foreign country could destroy our tariff law by imputing to Congress the intention to grant to all countries the exclusive special privileges and rights granted to one. Such a theory would destroy any advantage that one nation might have in granting exclusive rights, whereby it was profiting, to another.

It is further contended that plaintiffs are entitled to this right by virtue of an amendment to the Tariff Act of 1930, viz, section 350, found in T. D. 47117, 65 Treas. Dec. 1014. The plaintiffs place special stress on subparagraph (a) of this section, and the provision in (2) thereof reading—

* * * The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly.

and contend by this provision Congress extended to all countries the unconditional most-favored-nation principle. This contention is not sound; for in subsection (b) of section 350 is found the following:

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba; * * *

It therefore necessarily follows that if there was strength in the plaintiffs' reliance on section 350 (a), the very statute itself in subsection (b) destroys such reliance. Therefore, Congress did not have the intention to violate its agreement with Cuba of 1902; and the Tariff Act of 1930, section 316, specifically provides:

Nothing in this Act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1.

The plaintiffs, while admitting the supremacy of the *Von Damm* case, *supra*, insist that that case was construing only a modification of the corn duties contained in the trade agreement. A change in a statute or a contract is equivalent to a modification, and in the present case if the merchandise is not listed in the schedules of the Cuban agreement, yet a change in the rate may modify it, although it may be higher or lower. Modification cannot receive the construction contended for by the plaintiff within the four corners of this Trade Agreement with Cuba.

When section 350 (b) refers to modification it means in fact a change. There was therefore neither a modification nor a change of the treaty of 1902. The trade agreement of 1934 did not modify this treaty. It merely suspended it for the time being, and declared solemnly on all merchandise that the duty reduction should be 20 per centum. It did not refer to the treaty of 1902. It simply provided for the 20 per centum reduction. In the treaty and agreement the same reduction was maintained. The act modified nothing. It merely suspended the treaty during the existence of the trade agreement. Even if this was a modification, which it was not, the agreement and treaty provided the same reduction exclusively to Cuba. Therefore, the holding in the *Von Damm* case, *supra*, became applicable and controlling.

It must be constantly kept in mind that the United States had a specific purpose in granting preference to Cuba, not alone to advance Cuba's interests, but our own, as a reading of the agreement fully indicates. It was not the intention, even though there may not have been a modification, as contended by plaintiffs, on glasses, although they are not enumerated, to grant preferential privileges to any country outside of Cuba. The United States is empowered to enter into trade agreements with any country. It selected Cuba as the first with which to make such arrangement. If plaintiffs' contention is correct it would have been foolish to make the trade agreement it did. Therefore, the agreement itself being exclusive, its limits and its powers were confined alone to the manufacture and produce of each nation, and did not enure to the benefit of any other country.

Congress is not empowered to repeal the Treaty with Cuba of December 11, 1902, but in article XVI of the trade agreement with Cuba of August 24, 1934 (T. D. 47232, 66 Treas. Dec. 189, 194), it is provided that such commercial convention between the United States and Cuba of December 11, 1902, "shall be suspended on the day on which the present Agreement comes into force." It was not repealed, as contended by plaintiffs, for the provision continues:

In the event of the expiration or the denunciation of the present Agreement, the provisions of the aforesaid Convention of 1902 shall automatically resume

operation and shall continue in full force and effect as provided therein until the expiration of one year from the day on which the Government of either country shall have given notice to the other Government of an intention to terminate it.

This is a positive enactment indicating that the Convention of 1902 is not repealed. It is only suspended during the period of the existence of the present trade agreement. The moment this agreement expires, without further action of Congress, the commercial agreement of 1902 automatically resumes operation and effect.

It therefore seems to us that all the grounds contended for by the plaintiffs are without force and effect, as against this exclusive agreement with Cuba of August 24, 1934.

Without further elaboration or entering into other questions propounded by counsel, which we believe unnecessary as we feel they are all answered in the *Von Damm* case, *supra*, we conclude that the merchandise involved in the case at bar from Japan is not entitled to the reduction in duty provided for in the trade agreement with Cuba.

The protest is therefore overruled. Judgment for defendant.

### CONCURRING OPINION

Brown, Judge: I concur in the holding that section 350 precludes any generalization of the Cuban preferential of 20 per centum, continued or made by the so-called Executive Trade Agreement with Cuba, so as to prevent the generalization clause in the reciprocity statute applying to merchandise imported from Japan so as to reduce the duties thereon imposed by the Tariff Act of 1930, 20 per centum.

Secondly, I think the cases of *Bertram* v. *Robertson*, 122 U. S. 116, and *Whitney* v. *Robertson*, 124 U. S. 190, preclude the application of the favored-nation clauses of the treaties with Japan of November 22, 1894, and February 21, 1911, from affecting a reduction of 20 per centum in the merchandise before us imported from Japan.