MARIANAO SUGAR TRADING CORP. *v.* UNITED STATES (NO. 4768)[1]

United States Court of Customs and Patent Appeals, March 23, 1954

*Sharretts, Paley & Carter (Edward P. Sharretts, Howard Clare Carter,* and *Joseph F. Donohue* of counsel) for appellant.

*Warren E. Burger,* Assistant Attorney General *(Richard E. FitzGibbon* and *Dorothy C. Bennett,* special attorneys, of counsel), for the United States.

[Oral argument February 2, 1954, by Mr. Donohue and Mrs. Bennett]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, in which the importer seeks to establish that the Customs Court erroneously denied its claim for a twenty per cent reduction in the amount of a tax imposed under the provisions of the Sugar Act of 1937 [26 U. S. C. sec. 3500] on importations of refined sugar from Cuba. *Marianao Sugar Trading Corporation* v. *United States,* 29 Cust. Ct. 275, C. D. 1481.

[1] C. A. D. 557.

In its opinion, the court below, speaking through Judge Ekwall, presented this introduction which we adopt as accurate and concise: "Plaintiff [importer] herein imported a quantity of Cuban sugar which was entered at the port of New York in March 1947, and February and November 1949. Regular customs duties were assessed thereon at appropriate rates under the Tariff Act of 1930 (19 U. S. C. sec. 1001), as modified by the Cuban Trade Agreements in force on the dates of importation. These regular customs duties are not in dispute in this action. In addition thereto, a tax was assessed under section 3500 of the Internal Revenue Code (26 U. S. C., 1940 and 1946 eds.). As to this assessment, all of the protests claim that the collector should have granted a 20 per centum preferential reduction by virtue of the Cuban Treaty of 1902 (T. D. 24836). Protest 141159–K claims such preference should have been allowed under the Cuban Trade Agreement, concluded August 24, 1934 (T. D. 47232), and protests 157569–K and 161897–K attack the legality of certain provisions of the Cuban Trade Agreements (T. D.'s 47232, 50051 [50050], 50541, and 51819) suspending or abrogating the Cuban Treaty of 1902, as being beyond the scope of the powers granted the President under the Trade Agreements Act (sec. 350, Tariff Act of 1930, as amended (19 U. S. C. sec. 1351)).

"On behalf of the Government, it is claimed that such preferential treatment is expressly prohibited by the terms of section 3501 of said Internal Revenue Code, which provides that 'no preference with respect to such tax shall be accorded any articles imported or brought into the United States.' The effective period for the enforcement of the Sugar Act of 1937 here involved (section 3500 of the Internal Revenue Code, *supra*) was extended by Congress to June 30, 1953 (61 Stat. 934). [additionally extended, 65 Stat. 320, to June 30, 1957.]

"Plaintiff contends that as section 3501, *supra*, expressly provides that the tax levied under section 3500, *supra*, shall be treated as a duty, the preferential reduction provided in Article II of the Cuban Treaty of 1902 must be applied thereto and also that the provision in section 3501, prohibiting the granting of any 'preference' in such tax, conflicts with international obligations."

While the record and briefs present a somewhat involved situation, it is clear that the basic issue for determination relates principally to the meaning, effect, and extent of application of sections 3500 and 3501 of the Internal Revenue Code when the provisions thereof are read together with the terms of the Cuban Treaty of 1902. A number of interesting subsidiary questions, ably presented in the briefs and argued orally before this court, have been injected into the proceedings and, insofar as pertinent to the controlling issue, will be commented upon, *infra*.

As previously indicated, the appellant's position is predicated on the belief that the Cuban Treaty of 1902 guarantees to it a 20 per cent

reduction in the assessment levied under section 3500, *supra*. That treaty, the constitutional validity of which is *not itself* in issue, provides, *inter alia*, that certain Cuban goods be admitted at a "reduction of twenty per centum of the rates of duty thereon as provided by the Tariff Act * * * of 1897, or * * * by any tariff law * * * subsequently enacted." That provision, found in Article II, and the significance to be assigned thereto, is of critical concern and forms the basis for appellant's claim. Article VIII of the treaty states that "the rates of duty herein granted * * * shall continue * * * preferential in respect to all like imports from other countries," with the proviso, however, that no Cuban sugar should come in "at a reduction of duty greater than twenty per centum of the rates of duty thereon as provided by the tariff act of * * * 1897." That proviso was repealed by the tariff act of 1913. Article IX of the treaty sets forth an understanding and agreement between the contracting parties relative to the products covered by the treaty to the effect that "any tax or charge that may be imposed by the national or local authorities of either of the two countries upon the articles of merchandise embraced in the provisions of this convention, subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported."

Sections 3500 and 3501 of the Internal Revenue Code, originally sections 403 (a) and 403 (b) of the Sugar Act of 1937, read, in part, as follows:

Sec. 3500. Rate of Tax

In addition to any other tax or duty imposed by law, there shall be imposed, under such regulations as the Commissioner of Customs shall prescribe, with the approval of the Secretary, a tax upon articles imported or brought into the United States as follows:

*        *        *        *        *        *        *

(2) On all manufactured sugar testing by the polariscope less than ninety-two sugar degrees 0.5144 cent per pound of the total sugars therein.

Sec. 3501. Assessment and payment.

Such tax shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, 46 Stat. 590, 672 (U. S. C., Title 19, ch. 4) and shall be treated for the purpose of all provisions of law relating to the customs revenue as a duty imposed by such Act, except that for the purposes of sections 336 and 350 of such Act (the so-called flexible-tariff and trade-agreements provisions) such tax shall not be considered a duty or import restriction, *and except that no preference with respect to such tax shall be accorded any articles imported or brought into the United States.* [Italics ours.]

In overruling the appellant's protests, the court below was largely influenced by this court's holding in the case of *Faber, Coe & Gregg (Inc.)* v. *United States*, 19 C. C. P. A. (Customs) 8, T. D. 44851. Preliminary to our review of that case, however, it is well to repeat

and, to some extent, amplify the respective contentions of the parties herein. On behalf of the Government, it is asserted that allowance of the 20 per cent reduction claimed by the importer is forbidden by the exception found in section 3501, *supra*, prohibiting preferences. This is clearly a preference, the Government maintains, because no such reduction applies to sugar imports from other countries. In other words, as emphasized by counsel during oral argument, the Government's position is that since section 3501 specifically provides that no preference may be granted with respect to the tax levied under section 3500 on sugar, no preference can be granted, this certainly being a preference. Urging a contrary view, the appellant states that it does not argue for a preference; that the exception in section 3501 relating to preferences is not applicable because Article II of the treaty refers only to "reduction" and not "preference" and furthermore because the reduction in duty was granted on a valuable consideration and is consequently a contractual obligation giving a reduction and not a preference; that Article II of the Cuban Treaty of 1902, *supra*, embraces the type of tax levied by section 3500, *supra;* that the assessment under section 3500 and 3501 provides specifically that it be "levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930 * * * and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act * * *."; that the exceptions set forth in section 3501 must be read together as a limitation upon the President's powers under the flexible-tariff and trade-agreement provisions with respect to granting a preference, and therefore such exceptions are without significance relative to the Cuban Treaty of 1902; and that nothing in Article IX of said treaty authorizes the assessment of the full rate because it is not a "tax or charge" attaching to the imported goods "subsequent to importation and prior to their entering into consumption," but instead is to be levied, assessed, collected, and paid in the same manner as a duty imposed under the Tariff Act of 1930.

Proceeding now to a consideration of the *Faber, Coe & Gregg* case, *supra*, the merchandise there involved consisted of cigars imported from Cuba in 1927. Duty was assessed thereon under the applicable paragraph of the Tariff Act of 1922 less 20 per cent on such goods as provided in the Cuban Treaty of 1902. The importer was additionally required to purchase revenue stamps in accordance with the Revenue Act of 1926 which provided, in part, that "All cigars imported from foreign countries shall have the same stamps affixed in payment of the internal-revenue tax as are prescribed for cigars manufactured in the United States." The stamp tax was to be collected while the merchandise was in customs custody and the importer contended, therefore, that the involved taxes were customs

duties and as such it was entitled to a 20 per cent reduction as provided in Article II of the Cuban Treaty of 1902. In disposing of the importer's claim, this court said:

> Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. [citing cases.]
>
> *　　*　　*　　*　　*　　*　　*
>
> In view of the fact that, generally, customs duties become a lien on imported merchandise at the moment of its arrival within the limits of a port of entry, and, as taxes imposed on imported merchandise, while it retains its "distinctive character" as an import, are customs duties, regardless of whether they are imposed at the time of importation or subsequent thereto, it is obvious that the contracting parties intended to distinguish between the regular tariff duties (made preferential in respect to all like imports from other countries, Articles II and VIII) and other additional taxes, including additional customs duties, imposed on *imported merchandise subsequent to its importation and prior to its entering into consumption* (required by Article IX to be "imposed and collected without discrimination upon like articles whencesoever imported"), and to provide that, as to the regular tariff duties, the rates therein provided should continue preferential in respect to all like imports from other countries, whereas the additional taxes, including additional customs duties, should be imposed and collected *without discrimination* upon like articles whencesoever imported. [Italics quoted.]

The importer seeks to distinguish the factual situation existing in the *Faber, Coe & Gregg* case, *supra*, from the facts of the present controversy by stating that unlike the Revenue Act of 1926, section 3501 of the Internal Revenue Code contains a specific provision to the effect that the tax be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930 and be treated as a duty imposed by that Act. We do not think that the distinction thus drawn warrants a different conclusion herein.

In the cited case, this court determined that the revenue tax on cigars was an additional duty, different in status than the regular duties covered by the Cuban Treaty of 1902, and as such was not entitled to a reduction under Article II of that treaty for the stated reasons. Similarly, section 3501, *supra*, treats the sugar tax as a duty under the tariff. With equal force and effect, however, section 3501 specifically provides, by way of exception, that no preference with respect thereto shall be granted. That statute, clear and direct in its terms, was enacted in 1937 and, insofar as it has relation to the provisions of the Cuban Treaty of 1902, is a later expression of the will of the Congress. If there be any irreconcilable inconsistency between a constitutional treaty and a federal statute, both being equal in rank, the later pronouncement will prevail. *Whitney* v. *Robertson*, 124 U. S. 190; *Rainey* v. *United States*, 232 U. S. 310; *American Express Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 146, T. D. 33434;

*Minerva Automobiles, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 324, T. D. 49424.

We are of the opinion that the appellant herein is seeking a preference within the meaning of that term as found in section 3501, *supra.* As that statute specifically prohibits preferences, the importer's claim therefore must be denied. As defined in Webster's New International Dictionary, Second Edition, 1949, a preference is "the setting of one thing before or above another." Further definition therein is "one who or that which is preferred; the object * * * of choice or superior favor." To the same effect is the definition given in Funk and Wagnalls New Standard Dictionary, 1942. This additional comment in that publication, using the term in question in a commercial sense, is pertinent. A preference is "some advantage or privilege accorded to locality, class of goods, or competitor." In the American College Dictionary (Random House, New York), the term in question is defined as follows: "act of preferring; estimation of one thing above another. State of being preferred. That which is preferred, the object of prior favor or choice. The favoring of one country or group of countries by granting special advantages over others in international trade." While resort to dictionaries, however, is hardly necessary, the meaning of the word being so clear that it virtually speaks for itself, such reference emphasizes our ability to arrive at this conclusion. Furthermore, Article VIII of the Cuban Treaty of 1902 sets forth an agreement whereby the reduced rates should continue "*preferential* in respect to all like imports from other countries * * *."

We have considered the points raised by the appellant in its argument but find no reason therein to disturb the conclusion reached below. Alluding briefly, however, to certain of the appellant's contentions, the claim is made that the 20 percent reduction of duties accorded by Article II of the Treaty of 1902 is based on a valuable consideration and therefore is not a preference prohibited by section 3501. In pursuance of this theory, the appellant cites the cases of *Bartram* v. *Robertson*, 122 U. S. 116; *Whitney* v. *Robertson, supra*, and *Shaw* v. *United States*, 1 Ct. Cust. Appls. 426, T. D. 31500. We have read those cases but do not feel that they support the position taken by the appellant. It is, of course, clear that the Cuban Treaty of 1902 is based on valuable considerations but that does not disturb in the slightest the ability of Congress to subsequently pass legislation which it may deem advisable affecting the provisions of that treaty. It is further argued by the appellants that the exception provisions of section 3501, *supra*, were not intended to abrogate or repeal the pertinent provisions of the Cuban Treaty of 1902. In discussing this

point, considerable reference has been made to the Congressional debates and reports of appropriate Congressional committees. Our study of the debates in Congress and the committee reports, as presented, along with the specific language employed in section 3501, has convinced us that Congress meant exactly what it said, i. e., "that *no* preference," and we emphasize that language, "shall be accorded *any* articles," and we emphasize that language, "imported or brought into the United States."

The appellant draws attention to the provisions of the Trade Agreements Act, *supra*, approved June 12, 1934, whereby the President is given the authority to "enter into foreign trade agreements with foreign governments" and is authorized to "proclaim such modifications of existing duties and other import restrictions * * * as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder." It is the appellant's contention that the tax in question is a customs duty, as provided in section 3501, with the exception provisions therein contained relating solely to, and being a limitation upon, the powers of the President under the Trade Agreements Act. In other words, the appellant seeks to treat the exceptions in section 3501, *supra*, as one. The Customs Court considered this argument in some detail but concluded that "The exception, as enacted, is devoid of language that would warrant such a construction." We are in entire agreement with that holding as there is no factual basis whatsoever upon which we could otherwise conclude.

Other subsidiary issues have been raised by the appellant which we consider totally irrelevant to the one isolated and controlling question principally discussed herein. It is well, however, to note that in accordance with the Trade Agreements Act, *supra*, the President negotiated various Cuban Trade Agreements, the first of which was effective September 3, 1934. That agreement, as well as subsequent agreements between the two nations, modified and rendered inoperative the general 20 per cent preferential granted in Article II of the Cuban Treaty of 1902 under conditions stated in such agreements. The appellant has persistently urged that the President thereby exceeded the authority delegated to him by the Trade Agreements Act and that such agreements are henceforth invalid. We do not regard a discussion of such point as necessary.

The appellant's claim (Protest 141159–K) that it was entitled to the reduction of 20 per cent in accordance with the Cuban Trade Agreement of 1934, *supra*, was not affirmatively argued, either orally or in its brief, and thus appears to have been abandoned. Discussion thereon is accordingly unnecessary. See *Stan Newcomb and Barbara Todd* v. *United States*, 37 C. C. P. A. (Customs) 18, C. A. D. 413.

For the reasons hereinbefore stated, the judgment appealed from is *affirmed*.