## RAINEY *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

## UNITED STATES *v.* RAINEY.

CERTIFICATE FROM THE CIRCUIT OF APPEALS FOR THE SECOND CIRCUIT.

## RAINEY *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

## UNITED STATES *v.* RAINEY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 74, 627, 73, 628. Argued January 6, 7, 1914.—Decided February 24, 1914.

*Billings* v. *United States, ante,* p. 261, followed to the effect that under § 37 of the Tariff Act of 1909, in imposing a tax on the use of foreign-built yachts there is authority to bring an action *in personam* against the owner for the recovery; that the tax became due on the first day

of September next following the passage of the act; that the six months' clause applied only to the charterer and not to the owner of such a yacht; and that the statute does not violate the due process clause of the Fifth Amendment.

The second paragraph of § 37 of the Tariff Act of 1909 giving the owner of a foreign-built yacht an option to pay an *ad valorem* of 35 per cent. in lieu of the annual tonnage tax imposed on the use of such yacht by the first paragraph of the section, is separable from the first paragraph and its validity is not involved in an action to recover the tonnage tax from the owner of a foreign-built yacht who has not availed of the option.

*Quære,* whether one not the subject of the other contracting power to a treaty with the United States can invoke the protection of that treaty in regard to property rights.

When a treaty is inconsistent with a subsequent act of Congress the latter will prevail.

The Constitution does not declare that the law established by a treaty shall never be altered or repealed by Congress; and while good faith may cause Congress to refrain from making any change in such law, if it does so its enactment becomes the law.

Although the other contracting power to a treaty may have ground for complaint if Congress passes a law changing the law established by the treaty; every person is still bound to obey the latest law passed.

No person acquires any vested right to the continued operation of a treaty.

Even if there is judicial power to inquire whether a provision in a duly promulgated act of Congress raising revenue originated in the House of Representatives in accordance with Art. I, § 7 of the Constitution, it is sufficient if it appears that it was an amendment in the Senate to an act that originated in the House; and, after the act has been enrolled and duly authenticated, the court will not inquire whether the amendment was or was not outside the purposes of the original bill.

Where on direct appeal from the Circuit Court by one party based on constitutional questions the whole case can be disposed of, the questions certified by the Circuit Court of Appeals on an appeal taken by the other party need not be answered, and the judgment of the Circuit Court can be modified to the extent necessary and affirmed.

190 Fed. Rep. 359, modified and affirmed.

THE facts, which involve the construction and constitutionality of § 37 of the Tariff Act of 1909 imposing

a tax on the use of foreign-built yachts and the liability of the owner for such tax, are stated in the opinion.

*Mr. C. Andrade, Jr.*, for Rainey:

The act on its face shows that it was intended to operate prospectively; and therefore the tax is not payable until September 1, 1910.

The act does not levy a tax, but deprives defendant of his property without due process of law. The 35% duty is a direct tax, and void because not apportioned.

The seven dollar per ton annual tax on the use of the yacht is an excise or indirect tax, and void for want of uniformity.

Defendant's use of the yacht prior to August 5, 1909, tax free, was property. In order to make the tax fall due September 1, 1909, it is necessary to destroy such tax-free use of the yacht prior to August 5, 1909, which is a deprivation of property without due process of law.

A recovery in this action would destroy rights vested in the defendant under the British treaty of 1815, and would deprive defendant of his property without due process of law; and further Congress did not intend to annul the treaty of 1815.

The act does not authorize any action *in personam* against the owner or managing owner.

The yacht tax is void, as it is a bill for raising revenue, and it originated in the Senate and not in the House of Representatives.

In support of these contentions, see act of June 5, 1794, § 3; *American* v. *Worthington*, 141 U. S. 468; *Benziger* v. *United States*, 192 U. S. 38; British Treaties of July 3, 1815, October 20, 1818, August 6, 1827; *Chew Heong* v. *United States*, 112 U. S. 536; Cong. Rec., 61st. Cong., pp. 1573, 4275; Cooley, Const. Lim., p. 528; *Harvey* v. *Tyler*, 2 Wall. 328; *Hylton* v. *United States*, 3 Dall. 171; *Knowlton* v. *Moore*, 178 U. S. 41; *Lewis* v. *Penna. R. R.*

*Co.*, 220 Pa. St. 317; *McEwen* v. *Den*, 24 How. 242; *Murray* v. *Gibson*, 15 How. 421; *Pollock* v. *Farmers' Loan & Trust Co.*, 158 U. S. 601; *Re Pennsylvania Telephone Co.*, 2 Chest. Co. Rep. (Pa.) 129, 131; Rev. Stat., §§ 4131, 4132; *Sohn* v. *Waterson*, 17 Wall. 596; *State* v. *Smith*, 28 N. W. Rep. 241; Story on Const., 4th ed., p. 622; *The Miranda*, 47 Fed. Rep. 815, aff'd, 51 Fed. Rep. 523; *Thomas* v. *United States*, 192 U. S. 363, 370; *Twenty per Cent Cases*, 20 Wall. 179; *United States* v. *Heath*, 3 Cranch, 399; *United States* v. *Reese*, 5 Dillon (Kans.), 405; *United States* v. *Wigglesworth*, 2 Story (Mass.), 369; *Warren* v. *Crosby*, 34 Pac. Rep. 661.

*Mr. Assistant Attorney General Adkins*, with whom *Mr. Karl W. Kirchwey* was on the brief, for the United States.[1]

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The first two of the foregoing cases relate to a tax becoming due on the first of September, 1909, and the other two to a tax becoming due on the first of September, 1910, the taxes in all cases having been levied pursuant to § 37 of the Tariff Act of 1909 on the British built yacht Cassandra owned by the plaintiff in error. In these cases, as in those arising under the same act, which we have just decided, the certificates of the Circuit Court of Appeals are here because of writs of error from that court prosecuted by the United States for the purpose of reviewing the action of the trial court in rejecting a demand for interest and the two other cases are here on direct writ of error to the court below, to review its action in upholding the tax. In both the cases brought directly here, the pleadings of the Government asserted the citizenship of the defendant, the use of the yacht during the taxing period and the other statutory

---

[1] For abstract of argument, see p. 269, *ante.*

essentials to fix liability. The answers not traversing citizenship, ownership or use, set up the same defences as were urged in the cases we have just decided, somewhat however reiterated and changed in form of statement, and other defences not made in the previous cases. In the first direct case, judgment was rendered in favor of the Government for the tax by submission on bill and answer. In the second a like judgment was rendered, the case having been submitted by stipulation to the court without a jury, and in that case the finding of fact made by the court as to the use of the yacht is as follows: "During the period from the said twenty-fifth day of June, 1908, the date when the defendant purchased the said yacht, to the first day of September, 1910, the yacht was used by the defendant both in the waters of the United States and in the waters of foreign countries, as well as on the high seas, and in the year immediately preceding the first day of September, 1910, the said yacht was used by the defendant continuously in the waters of the United States, except for the period from June 20, 1910, to July 30, 1910, when she was used by the defendant on a cruise to the Gulf of St. Lawrence."

Separate assignments of error were made in the two cases which are here on direct review and are referred to and discussed in the arguments at bar. They are all, in both cases, however, embraced in the ten separate propositions stated in the argument, and both cases will therefore be disposed of by briefly considering and deciding them. In doing so we shall bring the several assignments under common headings for the purpose of avoiding repetition. First, that the court erred in holding there was authority to bring an action *in personam* against the owner for the recovery of the tax. This is disposed of by the reasoning adopted in the *Billings Case* in passing on the question of liability for interest. Second, that error was committed in holding the first installment of

the tax was due in September 1909, and in deciding that the six months clause, under the section in question "applied only to the charterer and did not apply to the owner of a foreign-built yacht." Third, that error was committed in deciding that the tax did not violate the due process clause of the Fifth Amendment and was not in conflict with the uniformity clause of Art. I, § 8 of the Constitution. These grounds also are disposed of by the opinion in the *Billings Case.* Fourth, that error was committed in not deciding that § 37 of the act of 1909 "in so far as it lays a duty of 35 per cent. *ad valorem* is a direct tax and void because not apportioned in contravention of Art. I, § 2, and Art. I, § 9 of the Constitution of the United States." This proposition is concerned with the second paragraph of the statute in question which gives a right to the owner of foreign-built yachts of commutation, as follows:

"In lieu of the annual tax above prescribed the owner of any foreign-built yacht, pleasure-boat or vessel above described may pay a duty of thirty-five per centum ad valorem thereon, and such yacht, pleasure-boat or vessel shall thereupon be entitled to all the privileges and shall be subject to all the requirements prescribed by sections forty-two hundred and fourteen, forty-two hundred and fifteen, forty-two hundred and seventeen, and forty-two hundred and eighteen of the Revised Statutes and Acts amendatory thereto in the same manner as if said yacht had been built in the United States, and shall be subject to tonnage duty and light money only in the same manner as if said yacht had been built in the United States."

We think the reasons given in the comprehensive opinion of the lower court in ruling adversely on this proposition are so conclusive that we adopt them and make them our own. The court said:

"The owner is not required to pay this duty. He is merely given the option to pay it. In its nature it would

seem to be a duty on imports and such duties are not held
to be direct taxes requiring apportionment. But it is
unnecessary to pass upon this question. These actions
are for the recovery of the annual tonnage tax and the
validity of the ad valorem tax is not involved. The provi-
sions concerning that tax are separable from those con-
cerning the annual tax. The one is not dependent upon
the other and there is no indication that Congress would
not have adopted the one without the other. Under such
conditions it is well settled that unconstitutional provi-
sions may be separated from legal provisions and effect be
given to the latter."

Fifth, that error was committed in not holding that en-
forcement of the tax "would destroy rights vested in the
defendant under the British Treaty of July 3, 1815" and
would for such reason "deprive the defendant of his prop-
erty without due process of law." The court below ade-
quately disposed of this contention upon reasons which
we also approve and adopt.

The court said:

"This defendant does not claim to be a British subject,
and it is by no means clear that he is entitled to invoke the
protection of the treaty. But, however that may be, it is
well settled that when a treaty is inconsistent with a sub-
sequent Act of Congress, the latter will prevail. *Taylor
v. Morton,* 2 Curtis, 454; and see *Whitney v. Robertson,*
124 U. S. 190; *Head Money Cases,* 112 U. S. 580; *Cherokee
Tobacco Case,* 11 Wall. 616; *Ropes v. Clinch,* 8 Blatchf. 304.

"Treaties are contracts between nations and by the
Constitution are made the law of the land. But the Con-
stitution does not declare that the law so established shall
never be altered or repealed by Congress. Good faith
toward the other contracting nation might require Con-
gress to refrain from making any change, but if it does act,
its enactment becomes the controlling law in this country.
The other nation may have ground for complaint, but

every person is bound to obey the law. And as a corollary it follows that no person acquires any vested right to the continued operation of a treaty."

Sixth, that error was committed in not deciding that § 37 of the act was not void "as it is a bill for raising revenue, and it originated in the Senate and not in the House of Representatives, in contravention of Article I, section 7, of the Constitution of the United States." Without intimating that there is judicial power after an act of Congress has been duly promulgated to inquire in which House it originated for the purpose of determining its validity, and upon the assumption for the sake of the argument that such power may be invoked, again we think the court below disposed of the contention upon a ground entirely satisfactory which we adopt and approve, the court saying:

"I am also satisfied that the section in question is not void as a bill for raising revenue originating in the Senate and not in the House of Representatives. It appears that the section was proposed by the Senate as an amendment to a bill for raising revenue which originated in the House. That is sufficient. Having become an enrolled and duly authenticated Act of Congress, it is not for this Court to determine whether the amendment was or was not outside the purposes of the original bill."

Following the practice adopted in the cases previously decided and treating, as we did in these cases, the United States as here on a cross-writ of error complaining of the refusal to allow interest, it follows that the questions asked by the Circuit Court of Appeals covered by the certificates need not be answered and that the judgments of the court below in the cases on direct writ of error in so far as they rejected the claim of interest will be modified to the extent necessary to allow such claim and in other respects will be affirmed. Therefore our order will be

*Modified and affirmed.*