25 C.C.P.A.(Customs)

## MINERVA AUTOMOBILES, Inc., v. UNITED STATES.
### Customs Appeal No. 4057.

Court of Customs and Patent Appeals.
Feb. 7, 1938.

Lawrence A. Harper, of San Francisco, Cal. (Abraham Gottfried, of Los Angeles, Cal., of counsel), for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Ralph Folks, of New York City, and John J. McDermott, Sp. Attys., of counsel), for the United States.

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Acting Presiding Judge.

Appellant has here appealed from the judgment of the United States Customs Court, Third Division, which overruled the protest of appellant against the assessment by the Collector of Customs at the port of Los Angeles of countervailing duty under paragraph 369 of the Tariff Act of 1922, § 1, 42 Stat. 858, 885, amounting to 960 Belgian francs per 100 kilos upon an automobile imported from Belgium. Appellant claims that the automobile should have been assessed with the normal duties under the aforesaid paragraph in view of the most-favored-nation clause contained in the treaty between Belgium and the United States which was proclaimed June 29, 1875, and is found in 19 Stat. 628.

Paragraph 369 of the Tariff Act of 1922, § 1, reads as follows:

"Par. 369. Automobiles, automobile bodies, automobile chassis, motor cycles, and parts of the foregoing, not including tires, all of the foregoing whether finished or unfinished, 25 per centum ad valorem: Provided, That if any country, dependency, province, or other subdivision of government imposes a duty on any article specified in this paragraph, when imported from the United States, in excess of the duty herein provided, there shall be imposed upon such article, when imported either directly or indirectly from such country, dependency, province, or other subdivision of government, a duty equal to that imposed by such country, dependency, province, or other subdivision of government on such article imported from the United States, but in no

case shall such duty exceed 50 per centum ad valorem."

We quote Article XII of the Belgium Treaty, supra:

"Article XII.

"In all that relates to duties of customs and navigation, the two high contracting parties promise, reciprocally, not to grant any favor, privilege, or immunity to any other State which shall not *instantly become common to the citizens and subjects of both parties respectively; gratuitously, if the concession or favor to such other State is gratuitous, and on allowing the same compensation, or its equivalent, if the concession is conditional.*

"Neither of the contracting parties shall lay upon goods proceeding from the soil or the industry of the other party, which may be imported into its ports, any other or higher duties of importation or re-exportation than are laid upon the importation or re-exportation of similar goods coming from any other foreign country." (Italics ours.)

In support of the protest the contention is made in this court by appellant's counsel to the effect:

First. That the Belgian treaty provides that that country is entitled to have charged on automobiles exported by it to this country a duty as low as that of any other country upon the same terms as are accorded to that other country.

Second. That the United States has extended to Spain, the Netherlands, and Cuba the right to import automobiles into this country without being charged any countervailing duty (this is true by reason of the fact that these countries charge no more than 25 per centum ad valorem upon American automobiles). Appellant cites Treasury Decisions to show these facts.

Third. That on the date of the instant importation Germany had a treaty with the United States containing an unconditional most-favored-nation clause which permits her to export to the United States automobiles without the same being charged with countervailing duties, irrespective of the fact that Germany may charge the United States more than 25 per centum ad valorem on such automobiles.

Fourth. That since Germany was entitled to exemption from countervailing duties by virtue of our tariff treatment of automobiles from Spain, the Netherlands, and Cuba, without making any concession and

notwithstanding the fact that she may charge more than 25 per centum ad valorem duty on American automobiles, the terms of the Belgian treaty would be violated if countervailing duty was charged upon automobiles from Belgium, regardless of whether Belgium charges more than 25 per centum duty upon American automobiles.

Appellant states in substance that the issue as presented to this and the trial court is a new one, concedes that under the holdings in Bartram v. Robertson, 122 U.S. 116, 7 S.Ct. 1115, 30 L.Ed. 1118; Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L. Ed. 386; and other cases cited, the Belgian treaty contains a conditional most-favored-nation clause, and points out that under this court's decision in United States v. Domestic Fuel Corporation et al., 71 F.2d 424, 21 C.C.P.A., Customs, 600, 614, T.D. 47010, the said treaty with Germany is held to be an unconditional most-favored-nation treaty. It further calls attention to the fact that in the case of International Commerce Co. v. United States, T.D. 47493, 67 Treas.Dec. 142, the United States Customs Court held that by reason of the German treaty and the tariff treatment on cement imported from other countries, Germany was entitled to have its cement received in this country free of duty, although Germany charged a duty on cement exported from this country to it. Other decisions on this subject were cited.

We here quote the pertinent portion of the German treaty proclaimed October 14, 1925 (44 Stat. 2132):

"Article VII.

\* \* \* \* \* \*

"Each of the High Contracting Parties binds itself unconditionally to impose no higher or other duties or conditions and no prohibition on the importation of any article, the growth, produce or manufacture, of the territories of the other than are or shall be imposed on the importation of any like article, the growth, produce or manufacture of any other foreign country.

"Each of the High Contracting Parties also binds itself unconditionally to impose no higher or other charges or other restrictions or prohibitions on goods exported to the territories of the other High Contracting Party than are imposed on goods exported to any other foreign country.

"Any advantage of whatsoever kind which either High Contracting Party may extend to any article, the growth, produce,

or manufacture of any other foreign country *shall simultaneously and unconditionally, without request and without compensation, be extended to the like article the growth, produce or manufacture of the other High Contracting Party."* (Italics ours.)

Appellant has not attempted to prove the amount of customs duties which are imposed upon American automobiles by Belgium or by Germany, but states that Germany charges more than 25 per centum ad valorem duty thereon and cites a Treasury Decision to that effect. It, of course, is obvious that if appellant's contentions are sound, it is immaterial what rates of duty are charged by Belgium and Germany.

Appellant freely admits that if its contentions in the instant case are correct, every nation having a treaty containing a most-favored-nation clause of any character is entitled to have its automobiles exempted from the countervailing duty provided for in the paragraph in dispute. It points out that after the German treaty was entered into, the Reciprocal Trade Agreement Act was incorporated into the Tariff Act of 1930 as section 350 thereof, 19 U.S.C.A. § 1351, and states:

"* * * Therefore, to effectuate its policy of expanding foreign trade without disrupting treaty relations, and to avoid dispute and discrimination, Congress expressly extended all favors granted any one nation, to all other nations."

It is a matter of common knowledge that practically every nation of the world with whom we have commercial relations has a most-favored-nation treaty.

The trial court took the view that since Belgium had a conditional most-favored-nation treaty, it was not entitled to claim the same tariff treatment for automobiles as was extended to Germany which had an unconditional most-favored-nation treaty, and cited a number of decisions as bearing on this phase of the case. None of these decisions involved the question presented here, since the tariff treatment extended Germany or extended to any nation having a treaty relationship comparable to that of Germany was not involved therein. The trial court, and the Government in this court, which supports the trial court's decision, cite and discuss Whitney v. Robertson, supra; Shaw v. United States, 1 Cust.App. 426, T.D. 31500; and Bartram v. Robertson, supra.

In view of our conclusion on the question which is controlling of our decision, as is hereinafter set out, we find it unnecessary to discuss the difference in the effect of conditional treaties and the effect of unconditional treaties in situations like the one at bar, nor do we regard it as essential that we make any expression of opinion as to the soundness of appellant's contentions if our conclusion on the controlling question involved were otherwise.

We are of the opinion that the conclusion reached by the trial court in its third reason for overruling the protest of appellant is sound. It is stated in the following language:

"Possibly there is an additional reason why plaintiff could not prevail, viz., that the tariff act was enacted subsequent to the Belgian treaty. It is well settled that when a treaty is inconsistent with a subsequent act of Congress, the latter will prevail. Taylor v. Morton, Fed.Cas. No. 13,799; Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386; Head Money Cases, Edye v. Robertson, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798; Cherokee Tobacco, Boudinot v. United States, 11 Wall. 616, 20 L.Ed. 227; Ropes v. Clinch, Fed.Cas. No. 12,041; Rainey v. United States, 232 U.S. 310, 34 S.Ct. 429, 58 L.Ed. 617."

Some of the above decisions cited in the excerpt from the trial court's opinion go as far as the quoted language would indicate. Others, however, which we think are in accord with the weight of authority on the question, announce the principle that an act of Congress prevails over an earlier treaty so far as they cannot be reasonably harmonized, but that an intent to abrogate a treaty will not lightly be attributed to Congress. The Supreme Court of the United States has held in Whitney v. Robertson, supra (page 458):

"* * * If the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, to that extent they have the force and effect of a legislative enactment. Congress may modify such provisions, so far as they bind the United States, or supersede them altogether. By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of

either; but, if the two are inconsistent, the one last in date will control the other; provided, always, the stipulation of the treaty on the subject is self-executing [as is the Belgian treaty]. If the country with which the treaty is made is dissatisfied with the action of the legislative department, it may present its complaint to the executive head of the government, and take such other measures as it may deem essential for the protection of its interests. The courts can afford no redress. Whether the complaining nation has just cause of complaint, or our country was justified in its legislation, are not matters for judicial cognizance. * * *"

It also held, in United States v. Lee Yen Tai, 185 U.S. 213, 222, 22 S.Ct. 629, 633, 46 L.Ed. 878, that:

" * * * Nevertheless, the purpose by statute to abrogate a treaty or any designated part of a treaty, or the purpose by treaty to supersede the whole or a part of an act of Congress, must not be lightly assumed, but must appear clearly and distinctly from the words used in the statute or in the treaty."

In Frost v. Wenie, 157 U.S. 46, 58, 15 S.Ct. 532, 536, 39 L.Ed. 614, that court said:

" * * * It is well settled that repeals by implication are not to be favored. And, where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, the duty of the court—no purpose to repeal being clearly expressed or indicated—is, if possible, to give effect to both. In other words, it must not be supposed that the legislature intended by a later statute to repeal a prior one on the same subject, *unless the last statute is so broad in its terms, and so clear and explicit in its words, as to show that it was intended to cover the whole subject, and therefore to displace the prior statute. * * *"* (Italics ours.)

In United States v. Domestic Fuel Corp. et al., supra, this court, on the subject of repeal of a treaty by a subsequently enacted statute, pointed out that it was settled law that the principle that the repeal of a statute by implication was not favored, that this rule was well settled, and that the courts evidenced a strong disposition to apply this same rule in cases where treaties were involved. On this subject we there cited and quoted from Chew Heong v. United States, 112 U.S. 536, 5 S.Ct. 255, 28 L.Ed. 770. The court then concluded that Congress by the enactment of the statute relating to a duty on coal to be levied in accordance with the balance of trade between two countries did not either specifically or by implication repeal a preexisting treaty with Great Britain and other countries which contained a most-favored-nation clause. It will be remembered there, however, that the court's decision was based upon the proposition that Congress in the coal taxing statute not only failed to expressly repeal the treaty but made "express reservation by a clearly stated limitation running to the entire section which is wholly inconsistent with the idea of repeal even by implication." (71 F.2d page 431)

■ We have a different situation at bar. There is no such provision in paragraph 369, supra, preserving treaty rights, as characterized the legislation considered in the Domestic Fuel Corporation et al., Case, supra. From the context of the paragraph, it being in "broad," "clear," and "definite" terms, and from a consideration of the purpose for which it was enacted and the circumstances of its enactment, which need not be recited here, we are of the opinion that Congress never intended to permit the continued operation of the most-favored-nation clause in conditional treaties to affect and render nugatory its carefully worded and admittedly fair countervailing duty provision as applied to automobiles. We think the terms of the statute are so "broad," "clear," and "explicit" as to justify our conclusion reached here and that our holding is fully warranted by the language used by the Supreme Court of the United States in the Lee Yen Tai Case, supra.

We find ourselves much in the same frame of mind as was the Circuit Court for the Southern District of New York, where in its decision in Bartram et al. v. Robertson, 15 F. 212 (which was affirmed by the United States Supreme Court in Bartram v. Robertson, supra) the following language was used (page 216):

"There is a broader view of the controversy, however, which cannot be slighted. Stipulations like the one relied on are found in upwards of 40 treaties made between the United States and foreign powers since 1815. * * * If the argument for the plaintiffs is sound, all these treaty stipulations are to be deemed embodied in the tariff act so as practically to exempt from duty the importations of all these foreign countries whenever the products of a single country may be exempted from duty."

Here, as there, it is unthinkable that Congress had such a result as is contended for by appellant in contemplation when it enacted the countervailing duty provisions of said paragraph 369. It knew when it enacted the paragraph of the existence of the numerous most-favored-nation treaties and it must have known that if they were permitted to affect the paragraph its enactment would have been a useless and purposeless thing to do. We must not attribute to Congress the intention of performing such a futile and purposeless act.

It is, therefore, our conclusion that the trial court correctly held, in substance, that it was the intent of Congress that the countervailing duty provision under paragraph 369 should supersede the said Belgian treaty in respect to the countervailing duty on automobiles. It is our judgment that no other holding can logically be reached without in effect finding that the paragraph of the tariff act in controversy is a nullity. This we must decline to do.

The judgment of the United States Customs Court is affirmed.

Affirmed.