(C. D. 659)

RATHJEN BROS. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 1, 1942)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *Geo. R. Tuttle* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Charles J. Miville*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of rum from Cuba was imported into the United States in bottles of one gallon or less, and entered for warehouse on May 11, 1938. Certain of the merchandise was withdrawn from warehouse at various times but the only withdrawals with which we are here concerned are those of July 6 and July 14, 1938, consisting of 40 cases and 15 cases respectively. Upon such withdrawals the collector of customs assessed duty under the Tariff Act of 1930 as modified by the trade agreement between the United States and the Republic of Cuba of August 24, 1934 (49 Stat. 3559). With that assessment we are not here concerned, for the only issue raised by the pleadings is the legality of the assessment of an additional tax of $2.25 per proof gallon under the provisions of section 600 (a) of the Revenue Act of 1918 (40 Stat. 1105), as amended by section 710 of the Revenue Act of 1938 (52 Stat. 572). Plaintiffs contend that the amount of the additional tax properly assessable under the revenue act is only $2 per proof gallon, the rate in effect at the time of the signature of the Cuban Trade Agreement, August 24, 1934, (Liquor Taxing Act of 1934, 48 Stat. 313). This claim is made by reason of the provision in article VIII of the said Cuban. Trade Agreement to the effect that certain commodities (including distilled spirits) therein described shall be exempt from all taxes, fees, charges, or exactions in excess of those in effect on the day of the signing of the agreement.

The question for determination, therefore, is whether the assessment of the $2.25 rate under section 710 of the Revenue Act of 1938, which became effective as to merchandise tax paid on and after July 1, 1938, was warranted by law insofar as it was collected upon the rum withdrawn from warehouse on July 6 and July 14, 1938.

Article VIII of the Cuban Trade Agreement, insofar as applicable, reads as follows:

\* \* \* and all articles enumerated and described in Schedule II annexed to this Agreement, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall be exempt from all taxes, fees, charges or exactions, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day on which this Agreement comes into force.

Section 600 (a) of the Revenue Act of 1918, *supra*, levied a tax of $2.20 per proof gallon on distilled spirits (which term includes rum). This rate was reduced by the Liquor Taxing Act of 1934, *supra*,

effective January 11, 1934, and later the Revenue Act of 1938, *supra,* further amended the acts of 1918 and 1934 by increasing the tax to $2.25 per proof gallon effective July 1, 1938.

In the brief filed on behalf of the plaintiffs certain provisions of the Haitian Trade Agreement (T. D. 47667) are quoted and apparently relied on in addition to the provisions of the trade agreement with Cuba. However, the rum involved was a product of Cuba and there is nothing to indicate the applicability of the Haitian agreement to the tax here assessed under the internal revenue act, nor has any reason been given for considering that agreement.

It is the contention of the plaintiffs that, if possible, legislation enacted subsequent to the effective date of the trade agreement must be interpreted in harmony with the plain purpose of the treaty. This is in line with the well-known rule that a treaty and an act of Congress, both being the law of the land, must be considered together and, if possible, effect given to both. *United States* v. *Powers,* 305 U. S. 527; *United States* v. *Domestic Fuel Corp.,* 21 C. C. P. A. (Customs) 600, T. D. 47010; *Bill, etc.* v. *United States,* 27 C. C. P. A. (Customs) 26, C. A. D. 57. Plaintiffs further contend that the Revenue Act of 1938, which, so far as pertinent here, changed the rate of the tax on distilled spirits from $2 to $2.25, bears no evidence of an intention to abrogate the trade agreement.

The Government contends that section 710 of the Revenue Act of 1938, being a later enactment than the Cuban Trade Agreement of 1934, should govern the assessment here involved. This contention is based upon the well-known rule that a statute later in date supersedes the conflicting provisions of an earlier treaty. *Taylor* v. *Morton,* 2 Curtis 454; *Whitney* v. *Robertson,* 124 U. S. 190; *Head Money Cases,* 112 U. S. 580; *Cherokee Tobacco* case, 11 Wall. 616; *Ropes* v. *Clinch,* 8 Blatchf. 304; *Rainey* v. *United States,* 232 U. S. 310; *United States* v. *Lee Yen Tai,* 185 U. S. 213, 221.

Without deciding whether the trade agreement here involved is a treaty, it is the opinion of the court that being an international agreement entered into by authority of an act of Congress, it would be subject to the same rule in the event that its terms conflict with a later act of Congress.

Congress is presumed to have enacted the revenue act here in question with knowledge of the terms of the Cuban Trade Agreement. Had it been the intention of the lawmaking body that the products of Cuba should be subject to the tax imposed by the revenue act, such intention might very well have been expressed in the latter act by suitable wording. This was done in the enactment of section 601 (a) of the Revenue Act of 1932, which levied certain taxes, subject, however, to the proviso "unless treaty provisions of the United States otherwise provide."

It is interesting to note that in the supplementary trade agreement with Cuba (T. D. 50050), which became effective December 23, 1939, article VIII of the agreement of August 24, 1934, was amended insofar as pertinent to the issue herein, to read as follows: [We quote the third and fifth paragraphs of article III thereof]

Articles the growth, produce or manufacture of the Republic of Cuba enumerated and described in Schedule II annexed to this Agreement shall, on their importation into the United States of America, be exempt from all duties other than ordinary customs duties and all taxes, fees, charges or exactions, imposed on or in connection with importation, in excess of those imposed on September 3, 1934, or required to be imposed thereafter by laws of the United States of America in force on September 3, 1934.

    *     *     *     *     *     *     *

The provisions of Article I and Article III of this Agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

In a further supplementary trade agreement with Cuba (T. D. 50541) the last paragraph above quoted was further amended as follows:

The provisions of this Agreement shall not prevent the Government of either country from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

The above-quoted excerpts are enlightening as indicative of the intention of the parties to the trade agreement and also of their understanding of the terms of such agreement. Apparently both parties recognized that under the terms of article VIII of the original trade agreement with Cuba the exclusive rates therein provided would not be subject to laws which might subsequently be enacted, which later laws might be in conflict with the terms of the agreement. Apparently, also, in these later agreements it was considered wise by both parties to provide for the imposition of a rate or charge which would be compensatory for increased internal taxes imposed on like domestic goods. As evidence of this we quote from a press release entitled "The Analysis of General Provisions and Reciprocal Benefits in the Supplementary Trade Agreement with Cuba," issued by the Department of State on December 23, 1941, as follows:

Article IV amends Article VIII of the existing agreement, relating to internal and compensating taxes on imports. Recognizing the reasonableness of compensatory charges on imports when like domestic products are subjected to new or increased internal taxes imposed for bona fide revenue purposes, the amended Article provides that each country may apply to scheduled products imported from the other, equivalent to internal taxes imposed on like domestic products.

Such compensatory charges may not be greater than those imposed on like articles imported from third countries.

For the reasons above set forth we find that the claim of the plaintiffs herein is well founded. At the time the trade agreement with Cuba came into force, viz, August 24, 1934, rum was taxable with an internal revenue tax at the rate of $2 per proof gallon under the terms of the Liquor Taxing Act of 1934, *supra*. The increased rate on distilled spirits (which term includes rum) fixed by the Revenue Act of 1938, viz, $2.25 as of July 1, 1938, should not be held to apply to rum imported from and the product of Cuba which by the terms of a trade agreement with that country was exempt from taxes in excess of the amount in effect on August 24, 1934, viz, $2 per proof gallon.

We therefore find that the portion of the rum here imported which was withdrawn from warehouse on July 6 and July 14, 1938, is subject to assessment under the Liquor Taxing Act of 1934, at $2 per proof gallon. Judgment will be rendered for the plaintiffs accordingly.