(C. D. 695)

WM. H. HOEGEE *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 22, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Charles J. Miville, Joseph A. Howard, Jr.,* and *James Donnelly,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This suit against the United States was brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of bicycles and parts thereof imported from England on July 30, 1933, and entered at the port of Los Angeles, Calif., on August 5, 1933. Duty was levied thereon at the rate of 30 per centum ad valorem, plus a

so-called "countervailing duty" of 3⅓ per centum ad valorem under the following paragraph of the Tariff Act of 1930:

PAR. 371. Bicycles, and parts thereof, not including tires, 30 per centum ad valorem: *Provided*, That if any country, dependency, province, or other subdivision of government imposes a duty on any article specified in this paragraph, when imported from the United States, in excess of the duty herein provided, there shall be imposed upon such article, when imported either directly or indirectly from such country, dependency, province, or other subdivision of government, a duty equal to that imposed by such country, dependency, province, or other subdivision of government on such article imported from the United States, but in no case shall such duty exceed 50 per centum ad valorem.

The plaintiff does not question the assessment of the regular duty of 30 per centum ad valorem, but claims that the so-called "countervailing duty," which is really a contingent duty, should not have been imposed on said merchandise because of the presence in article 2 of the treaty made and entered into by and between the United States and Great Britain on July 3, 1815 (8 Stat. 228), of the following most-favored-nation clause:

* * *. No higher or other duties shall be imposed on the importation into the United States of any articles, the growth, produce, or manufacture, of his Britannick majesty's territories in Europe, and no higher or other duties shall be imposed on the importation into the territories of his Britannick majesty in Europe of any articles the growth, produce, or manufacture, of the United States, than are or shall be payable on the like articles being the growth, produce, or manufacture, of any other foreign country; * * *.

Hence, we have this question: Was the contingent duty of 3⅓ per centum ad valorem properly imposed on the present merchandise?

No testimony was introduced herein, but there was received in evidence as plaintiff's exhibit 1 a typewritten list naming certain nations and various rates of duty imposed by them on bicycles and parts thereof imported from the United States.

In his very able and exhaustive brief filed herein, counsel for the Government thus expresses his view of the law in the premises:

The Government contends that the proviso contained in paragraph 371 of the Tariff Act of 1922 and reenacted in the identical language in paragraph 371 of the Tariff Act of 1930, being later in date, superseded the conditional most-favored-nations-clause in the treaty entered into between the United States and Great Britain on July 3, 1815.

And he cites ample judicial authority in support of such contention.

For instance, in *Ribas y Hijo v. United States*, 194 U. S. 315, Mr. Justice Harlan, speaking for the United States Supreme Court, said:

We may add that even if the act of March, 1887, standing alone, could be construed as authorizing a suit of this kind, the plaintiff must fail; for, it is well settled that in case of a conflict between an act of Congress and a treaty—each being equally the supreme law of the land—the one last in date must prevail in the courts. *The Cherokee Tobacco*, 11 Wall. 616, 621; *Whitney v. Robertson*, 124 U. S. 190, 194; *United States v. Lee Yen Tai*, 185 U. S. 213, 221.

And in *Rainey* v. *United States*, 232 U. S. 310, the same tribunal, through Chief Justice White who quoted from the lower court, stated that—

Treaties are contracts between nations and by the Constitution are made the law of the land. But the Constitution does not declare that the law so established shall never be altered or repealed by Congress. Good faith toward the other contracting nation might require Congress to refrain from making any change, but if it does act, its enactment becomes the controlling law in this country. The other nation may have ground for complaint, but every person is bound to obey the law. And as a corollary it follows that no person acquires any vested right to the continued operation of a treaty.

Moreover, the precise issue of law here raised was decided in *Minerva Automobiles, Inc.* v. *United States*, 25 C. C. P. A. 324, T. D. 49424, wherein a certain automobile, imported from Belgium, was assessed with a contingent duty under a *proviso* in paragraph 369 of the Tariff Act of 1922, worded literally the same as the proviso in the present paragraph 371. Also, as in the said British treaty, the most-favored-nation clause in the Belgian treaty there before the court was conditional in character. In affirming our decision, the appellate court quoted therefrom with approval the following:

Possibly there is an additional reason why plaintiff could not prevail, viz, that the tariff act was enacted subsequent to the Belgian treaty. It is well settled that when a treaty is inconsistent with a subsequent act of Congress, the latter will prevail. *Taylor* v. *Morton*, Fed. Cas. No. 13,799; *Whitney* v. *Robertson*, 124 U. S. 190, *Head Money Cases* (*Edye* v. *Robertson*), 112 U. S. 580, 28 L. ed. 798; *Cherokee Tobacco* (*Boudinot* v. *United States*), 11 Wall. 616, 20 L. ed. 227; *Ropes* v. *Clinch*, Fed. Cas. No. 12,041; *Rainey* v. *United States*, 232 U. S. 310, 58 L. ed. 616.

And at pages 329 and 330 the appellate court stated:

We find ourselves much in the same frame of mind as was the Circuit Court for the Southern District of New York, where in its decision in *Bartram et al.* v. *Robertson*, 15 Fed. 212 (which was affirmed by the United States Supreme Court in *Bartram* v. *Robertson*, *supra*), the following language was used:

There is a broader view of the controversy, however, which cannot be slighted. Stipulations like the one relied on are found in upwards of 40 treaties made between the United States and foreign powers since 1815. * * * If the argument for the plaintiffs is sound, all these treaty stipulations are to be deemed embodied in the tariff act so as practically to exempt from duty the importations of all these foreign countries whenever the products of a single country may be exempted from duty.

Here, as there, it is unthinkable that Congress had such a result as is contended for by appellant in contemplation when it enacted the countervailing duty provisions of said paragraph 369. It knew when it enacted the paragraph of the existence of the numerous most-favored-nation treaties and it must have known that if they were permitted to affect the paragraph its enactment would have been a useless and purposeless thing to do. We must not attribute to Congress the intention of performing such a futile and purposeless act.

It is, therefore, our conclusion that the trial court correctly held, in substance, that it was the intent of Congress that the countervailing duty provision under paragraph 369 should supersede the said Belgian treaty in respect to the counter-

vailing duty on *automobiles*. It is our judgment that no other holding can logically be reached without in effect finding that the paragraph of the tariff act in controversy is a nullity. This we must decline to do. [Italics ours.]

While counsel for the plaintiff concedes that the issue of law there decided and here presented is identical, nevertheless he insists in his brief that the appellate court "seriously erred in the *Minerva* case *supra*," citing as the basis of that statement the decision of the same tribunal in *John T. Bill Co., Inc.* v. *United States*, 27 C. C. P. A. 26, C. A. D. 57, wherein certain bicycle parts imported from Germany were held to be dutiable at but 30 per centum ad valorem under paragraph 371 of the Tariff Act of 1930.

But those two cases are easily distinguishable. In the *Minerva* case the statute was enacted subsequent to the treaty, whereas in the *Bill* case the treaty was entered into after the statute had become law. On that state of facts the court in the *Bill* case merely invoked the well-known rule, saying: "It is well established, of course, that where a treaty and an act of Congress are in conflict, the latest in date must prevail. *United States* v. *Lee Yen Tai*, 185 U. S. 213."

Furthermore, in the *Bill* case the most-favored-nation clause in the German treaty was "unconditional" whereas in the British treaty here under consideration it is "conditional," as was also the same clause in the Belgian Treaty in the *Minerva* case. That fact was stressed in the decision in the *Bill* case, the court saying:

\* \* \*. The entire contention rests upon the *unconditional* character of the treaty, it, in effect, being conceded that, upon the authority of a long line of decisions by both the executive and judicial branches of the Government, the most-favored-nation doctrine would not apply in this case were the treaty of the conditional type, such, for example, as the treaty with Belgium which was involved in the case of *Minerva Automobiles, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 324, T. D. 49424, where we held that a proviso of paragraph 369 of the Tariff Act of 1922 superseded the most-favored-nation clause of a conditional Belgian treaty "in respect to the countervailing duty on automobiles."

And at pages 34 and 35:

There remains to be considered the contention made by counsel for the Government that the most-favored-nation clause of the treaty with Germany was superseded by the Tariff Act of 1930, specifically (as to the merchandise here involved), by paragraph 371, *supra*, of the act. As has been indicated, the insistence is that our decision here should be controlled by our decision in the *Minerva Automobiles, Inc.*, case, *supra*.

We do not agree with this view. *The cases are clearly distinguishable. In that case it was held that the conditional most-favored-nation clause of the Belgian Treaty of 1875 had been superseded, as to the merchandise there involved, by paragraph 369 of the Tariff Act of 1922. So far as we are able to ascertain, there was no provision of law such as paragraph 369 in effect at the time of the ratification of the Belgian Treaty, hence that treaty did not have the effect of repealing or superseding any prior act of Congress.* [Italics ours.]

When the German Treaty was ratified paragraph 371 of the Tariff Act of 1922 was in effect and the treaty, in our view, superseded it so far as importations from

Germany were concerned, but the paragraph remained in effect as to importations from countries with which we had no commercial treaties or had only treaties of the conditional type. In order that those countries might have the benefit of the normal rate it was necessary that they should compensate by giving to importations from the United States a similar rate. The agreement between the United States and Germany was that each should receive the benefit of the lowest rate granted by it to any third country, "simultaneously and *unconditionally*, without request and *without compensation*." It was not required that in order to make applicable the rate of 30 per centum ad valorem on bicycle parts imported from Germany that country should give that rate to importations from the United States. It was required only that Germany admit importations from the United States at the lowest rate granted upon importations from any other country. [Italics ours.]

Counsel for the plaintiff states in his brief that in the *Bill* case, upon which he relies, "the court held that the lower rate must be extended to Germany, *immediately, unconditionally, and without compensation*." He then argues that "since the treatment extended to Germany was extended gratuitously, Great Britain is entitled to the same treatment gratuitously."

But the "treatment" extended to Germany was *not* extended gratuitously. The United States agreed to give Germany unconditional most-favored-nation treatment, because in turn Germany agreed to give the United States the same. The court held in the *Bill* case that certain bicycles imported from Germany were entitled to admission into the United States without the imposition of the so-called countervailing duty imposed by virtue of the *proviso* to paragraph 371, Tariff Act of 1930. But as before stated that decision does not apply here for the good and sufficient reason that the German Treaty there involved was later in date than the date of the enactment of paragraph 371 of the Tariff Act of 1922 of which the present paragraph 371 is a literal re-enactment. In the instant case, the reverse is true, the British Treaty of 1815 having been superseded by the Tariff Act of 1930 as to the particular kind of merchandise involved herein.

Upon all the facts and the law applicable thereto we follow the decision in *Minerva Automobiles, Inc.* v. *United States, supra,* and hold the present bicycles and parts thereof to be properly dutiable at the rate of 30 per centum ad valorem under the *eo nomine* provision therefor in paragraph 371 of the Tariff Act of 1930, plus a contingent duty of 3⅓ per centum ad valorem imposed thereon under the *proviso* to said paragraph, as classified by the collector. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed.

Judgment will be rendered accordingly.