**UNITED STATES of America and the Federal Communications Commission, Plaintiffs,**

v.

**Reverend Carl McINTIRE et al., Defendants.**

**Civ. A. No. 1367-73.**

United States District Court, D. New Jersey.

Oct. 25, 1973.

---

Herbert J. Stern, U. S. Atty., Frederick W. Klepp, Asst. U. S. Atty., Gilbert
S. Fleischer, Atty.-in-Charge, Admiralty and Shipping Section, Dept. of Justice, for plaintiff United States.

John W. Pettit, Gen. Counsel, Hilburt Slosberg, Associate Gen. Counsel, Daniel M. Armstrong, Counsel, Barbara B. O'Malley, Counsel, Washington, D. C., for plaintiff F. C. C.

Alfred R. Pierce, Camden, N. J., Henry Thomas Dolan, Philadelphia, Pa., Benedict P. Cottone, Washington, D. C., Keith J. Bashaw, Collingswood, N. J., for defendants.

## ON DEFENDANTS' MOTION TO DISMISS COMPLAINT AND DISSOLVE TEMPORARY RESTRAINING ORDER

### OPINION

COHEN, Chief Judge:

This is an action for a preliminary and permanent injunction by the United States of America and the Federal Communications Commission (FCC) against the Reverend Carl McIntire, Pastor of the Bible Presbyterian Church, Collingswood, New Jersey, and Wayne C. Hansen and Christopher Hansen, Miami, Florida, owners of the vessel "Oceanic," pursuant to Sections 401(a),[1] 401(c),[2] and 414[3] of the Communications Act of 1934 (Act), 47 U.S.C. § 151 et seq. Jurisdiction of this Court is invoked pursuant to Section 401(a) of the Act.

The facts out of which this controversy arose are as follows:

Following the loss of his FCC license to operate radio station WXUR (FM) in

---

1. Section 401(a) provides in part:
   The district courts of the United States shall have jurisdiction, upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of this chapter by any person, to issue a writ or writs of mandamus commanding such person to comply with the provisions of this chapter.

2. Section 401(c) provides in part:
   Upon the request of the Commission it shall be the duty of any United States attorney . . . to institute in the proper court and to prosecute under the direction of the Attorney General of the United States all necessary proceedings for the enforcement of the provisions of this chapter and for the punishment of all violations thereof . . . .

3. Section 414 provides:
   Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

Media, Pennsylvania,[4] defendant Reverend Carl McIntire chartered a vessel owned and operated by defendants Wayne and Christopher Hansen and, after equipping it with radio broadcast equipment, proceeded to a location some three and one-half (3½) miles off the coast of New Jersey. At or about 12:40 P.M. September 19, 1973 Dr. McIntire began to transmit a radio broadcast signal. The defendants' broadcast was admittedly made without a license issued by the FCC as a direct challenge to the power of the United States to restrict and regulate radio broadcasts originating beyond its territorial limits.

The complaint in the instant action was filed by plaintiffs on September 21, 1973 to enforce provisions of Section 301[5] of the Communications Act of 1934, 47 U.S.C. § 301, and Article 7, Section 1(1)[6] of the International Tele-Communications Convention of 1959 (Convention), 12 U.S.T. & O.I.A. 2377, 2480, entered into force on October 23, 1961.

On September 21, 1973 this Court issued a temporary restraining order, pursuant to Rule 65(b), F.R.Civ.P., enjoining defendants, their employees and agents from operating radio broadcast equipment on board the American-registered vessel "Oceanic," also known as the "Columbus," without a license issued by the Federal Communications Commission as required by Section 301 of the Act.[7] It is alleged that the broadcast while originating beyond the territorial waters of the United States, interfered with the broadcast frequencies of several duly licensed radio stations, namely KSL (AM) in Salt Lake City, Utah, and WHLW (AM) of Lakewood, New Jersey.

On application of defendants, this Court extended the temporary restraining order until November 1, 1973. Defendants now move to dismiss the complaint and to dissolve the restraining order.

## DISCUSSION

For purposes of this motion to dismiss, the pleaded material allegations of plaintiffs' complaint are taken as admitted. Rule 12(b)(6), F.R.Civ.P.; 2A Moore, Federal Practice § 12.08 at 2266 et seq.

Defendants first argue that this Court does not have jurisdiction in this case in that the FCC failed to follow the proper procedure in instituting this action. Specifically, it is alleged that the FCC did not request the Attorney General of the United States to proceed against the defendants in accordance with Section 401(a)[8] of the Act. Accordingly, it is urged, the complaint and the resulting restraining order are fatally defective. With this we do not agree.

It should first be noted that the United States Attorney for the District of New Jersey is appearing in this case as counsel for plaintiff United States of America. It is highly unlikely that the United States Attorney—the local representative of the Attorney General—would have participated in the filing of the complaint and prosecution of this action without authorization and approval of the Attorney General. It is also

---

4. For the history of the loss of the WXUR license, see Brandywine-Maine Line Radio, Inc. v. FCC, 153 U.S.App.D.C. 305, 473 F.2d 16 (1972), cert. denied, 412 U.S. 922, 93 S. Ct. 2731, 37 L.Ed.2d 149 (1973) and Comment, Evaluation of Basis for and Effect of Broadcasting's Fairness Doctrine, 5 Rutgers Camden L.J. 167 (1973).

5. Section 301 provides in part:
   No person shall use or operate any apparatus for the transmission of energy or communications or signal by radio . . .
   (e) upon any vessel or aircraft of the Unit-

ed States . . . except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.

6. The Convention provides in part:
   § 1(1) The establishment and use of broadcasting stations . . . on board ships, aircraft or any other floating or airborne objects outside national territories is prohibited.

7. See note 5 *supra*.

8. See note 1 *supra*.

unlikely that the Attorney General would have authorized such action unless a request to do so was tendered by the FCC.

Furthermore, FCC regulations clearly authorize the General Counsel of the agency to "take action . . . as to civil and criminal proceedings to enforce the Communications Act, the rules and regulations of the Commission . . . in courts of the United States." 47 C. F.R. § 0.47 (Supp.1972). Finally, the affidavit of regularity executed by John W. Pettit, General Counsel of the FCC, indicates that the present action was initiated only after consultation with representatives of the Attorney General of the United States.

■ This Court is of the opinion that the presumption of regularity which attaches to the acts of government officials has not been rebutted. Fusco v. Richard W. Kasse Baking Co., 205 F. Supp. 465, 474 (W.D.Ohio 1962); Le-Baron v. Kern County Farm Labor Union, 80 F.Supp. 151, 155 (S.D.Cal.1948). Plaintiffs, then, have satisfied the jurisdictional requirements of Section 401 (a).

Defendants next urge that the Convention, ratified in 1961, has eliminated the FCC's power to license radio broadcast equipment on vessels, pursuant to Section 301(e) of the Act of 1934.

Section 301 provides in part that, "No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio . . . (e) upon any vessel . . . of the United States . . . except under and in accordance with this chapter and with a license . . . granted under the provisions of this chapter."

Article 7, Section 1(1) of the Convention prohibits the "establishment and use of broadcasting stations . . . outside national territories . . . ."

■■ While it is true that treaties and acts of Congress are equally binding on this Court,[9] and while it is true that where a treaty and an Act of Congress are in direct, irreconcilable conflict, the latter in time prevails,[10] such a conflict does not appear in this case.

■ The Convention complements and further restricts those areas subject to regulation by the FCC pursuant to the Act. The prohibition of the Convention is one of the numerous limitations on the power of the FCC to issue a broadcast license.[11] To suggest that this prohibition limits the FCC's power to proceed against a party who broadcasts in violation of the prohibition is wholly without merit. Indeed, the opposite conclusion prevails. The Convention enhances the FCC's enforcement powers against those who would broadcast from beyond United States territorial boundaries in violation of the Act and the Convention.

Defendants also contend that the Convention has been implemented by the United States only in terms of penal enforcement; hence, equitable relief is not available to plaintiffs.

■ Section 502 of the Act, 47 U.S. C. § 502, provides that violations of FCC regulations and conventions "shall, *in addition to any other penalties provided by law,* be punished, upon conviction thereof, by a fine of not more than $500 for each and every day during which such offense occurs." (emphasis

---

9. *See, e. g.,* Z. & F. Assets Realization Corp. v. Hull, 72. U.S.App.D.C. 234, 114 F.2d 464 (1940); United States v. 85,237 Acres of Land, 157 F.Supp. 150 (S.D.Tex.1957).

10. *See, e. g.,* Rainey v. United States, 232 U.S. 310, 34 S.Ct. 429, 58 L.Ed. 617 (1914); Horner v. United States, 143 U.S. 570, 12 S.Ct. 522, 36 L.Ed. 266 (1892); Savelis v. Vlachos, 137 F.Supp. 389 (E.D.Va.1955).

11. For example, FCC regulations relating to frequency allocation restrict and prohibit the FCC from issuing certain types of broadcast licenses to certain classes of broadcasters. 47 C.F.R. § 2.100 et seq. (Supp.1972). To suggest that these prohibitions and restrictions on the FCC's licensing powers prevent the FCC from taking action against a party who broadcasts on an unassigned and indeed unassignable frequency without a license, is untenable. Such a conclusion would render FCC regulatory and statutory restrictions unenforceable guidelines.

added). It is clear that this section does not act to divest this Court of its discretionary equitable powers which are always available where a legal remedy is inadequate and an important public interest is at stake.[12] Further, the Act affirmatively grants this Court power to issue injunctions to prevent violations of the Act.

Thus, Section 401(a) gives authority to the United States to seek, and for this Court to grant, "writs of mandamus commanding . . . person to comply with the provisions of this chapter." Moreover, Section 414 of the Act states that, "Nothing in this chapter . . . shall in any way abridge or alter the *remedies now existing at common law or by statute,* but the provisions of this chapter are in addition to such remedies." (emphasis added). Certainly, this Court's power to issue an injunction —a traditional common law remedy— has not been abrogated.

Defendants next maintain that this Court should not exercise its equitable powers to enjoin commission of a criminal offense.

■■ While this is a general rule of equity, courts retain the power to enjoin acts which while they may constitute criminal offenses, have a serious impact on the public welfare by creating a widespread nuisance.[13] As early as 1929, at least one federal court has held that radio broadcasting without a license is the type of public nuisance which may be restrained by injunction, regardless of the fact that the act also constituted a criminal violation. United States v. American Bond & Mortgage Co., 31 F.2d 448 (E.D.Ill.1929). This Court is in agreement with the conclusion reached in that case.

Defendants also urge that the administrative requirements of the Act have not been complied with and, therefore, the case is not ripe for adjudication.

■ However, an examination of the Act reveals that plaintiffs need not pursue administrative remedies as a condition precedent to this Section 401(a) action. The administrative process referred to by defendants is only applicable to Section 401(b), 47 U.S.C. § 401(b), actions which relate to enforcement of FCC cease and desist orders issued under Section 312(b), 47 U.S.C. § 312(b), of the Act relating to administrative sanctions. It is not a condition precedent to this Court exercising its equity powers to prevent irreparable harm and enjoin an existing public nuisance.

Defendants finally argue that the injunction should be dissolved in that there has been no showing of irreparable harm.

■ However, in at least two instances, defendants' transmissions have caused harmful interference with the broadcast signals of several duly licensed stations. The fact that defendants voluntarily halted their broadcasts pending technical adjustments aimed at avoiding further interference is not dispositive of this issue. As the United States Supreme Court has consistently noted the application of the traditional equitable criteria of irreparable harm is eased in those cases where the activity against which the injunction is sought constitutes a violation of a federal statute. In such cases, the public interest should bear more than the traditional evaluation of equitable principles—even to the point of slackening the customary criteria. *See, e. g.,* United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); Virginian Ry. v. System Federation No.

---

12. *See, e. g.,* Porter, Price Administrator v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); SEC v. MacElvain, 417 F.2d 1134 (5th Cir. 1969); United States v. Brotherhood of Railroad Trainmen, 96 F.Supp. 428 (N.D.Ill.1951);

United States v. Peterson, 91 F.Supp. 209 (S.D.Cal.1950).

13. *See, e. g.,* United States v. Jalas, 409 F.2d 358 (7th Cir. 1969); Bass Anglers Sportsman Society of America v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn.1971).

40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); United States v. Stoeco Homes, Inc., 359 F.Supp. 672 (D.N.J. 1973).

## CONCLUSION

 In ruling on a motion to dismiss under the Federal Rules of Civil Procedure [Rule 12(b)(6)], a complaint may not be dismissed unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts which could be proved in support of the claim. *See, e. g.,* Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968); Mizell v. North Broward Hospital Dist., 392 F.2d 580 (5th Cir. 1968); 2A Moore Federal Practice § 312.08 at 2271 et seq. Applying this standard to the present case, it cannot be said that plaintiffs' case is without merit. Defendants' motions to dismiss the complaint and dissolve the temporary restraining order are denied.[14]

An appropriate order may be submitted.

---

14. Pending before the Court is plaintiffs' motion to amend their complaint. However, the Court is of the opinion that resolution of the issues raised in that motion are not crucial to the Court's decision of defendants' motions herein under consideration. In order to expedite this case, and with the agreement of the parties, plaintiffs' motion to amend will be heard at a later date.